THOMAS L. FORTAS, Plaintiff-Appellee, *v.* PATRICIA A. DIXON, Defendant-Appellant (Michael E. LaVelle *et al.*, Defendants).

First District (1st Division)   No. 84—434

Opinion filed March 19, 1984.

CAMPBELL, J., dissenting.

James P. Chapman and Alan Mills, both of James P. Chapman and Associates, Ltd., and Thomas E. Johnson, both of Chicago, for appellant.

Andrew M. Raucci, of Chicago, for appellee.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, Thomas Fortas, brought this action to review a decision of the Chicago Board of Election Commissioners overruling certain objections he had filed in relation to the nominating petition of defendant Patricia Dixon, a candidate for democratic ward committeeman of the first ward. Plaintiff argued that the board had erred in refusing to strike all the names on several sheets of the nominating petition where he had demonstrated that the circulators of the various sheets had filed false affidavits in connection with the circulation of these sheets. The trial court found that the ruling of the electoral board "overruling all of the objections to the nominating papers of Patricia A. Dixon [was] contrary to law and the manifest weight of the evidence." After striking the additional names from the nominating petition of defendant, she did not have the number of signatures required by statute (Ill. Rev. Stat. 1981, ch. 46, par. 7—10). Accordingly, the trial court ordered that the name of candidate Dixon not be printed on the primary ballot. We granted defendant's request for an expedited appeal to this court.

The record reveals as follows. Plaintiff filed timely objections to

the nominating petition of defendant, alleging a number of deficiencies and improprieties. The only objections at issue in this appeal deal with plaintiff's contention that certain signatures were invalid because the persons who presented the various sheets of the nominating petition to the signers were not the persons who signed the circulator's affidavit. On January 9, 1984, the board's hearing examiner conducted a hearing on the validity of the candidate's nominating petition. During this hearing, plaintiff presented several witnesses and numerous affidavits in support of his allegations.

In particular, the following testimony was elicited. Oliver Gregory testified that he had personally circulated three sheets of the petition; sheets 1, 41, and 91. Sheets 1 and 41 bore the signature and affidavit of Ardelia Jones as circulator and sheet 91 was signed by Maxine Spencer as circulator. Sheets 5, 95, and 113 were all subscribed by a man, A. C. Kelly, as circulator. Ardelia Page and Lottie Judkins testified that they signed sheet 5 of defendant's nominating petition which was presented to them by Carolyn Johnson. Neither of them recalled any men accompanying Ms. Johnson. Frances Schaeffer testified that she signed sheet 95 which was presented to her by a "female Spanish girl." Sharon Frazier, O. C. Frazier, and Cynthia Schaeffer signed at the same time. O. C. Frazier corroborated the testimony of his grandmother, Frances Schaeffer, and identified the circulator as a person known to him as "Becky." A close examination of sheet 95 revealed that the name of Rebecca Rivera was whited-out and the name of A. C. Kelly was written over the whiteout of sheet 95, as circulator. James Rhodes testified that he signed sheet 113, which was presented to him by a black woman who was alone. In addition, 17 affidavits were admitted in evidence to the effect that the person presenting the affiants the various sheets which they had signed was not A. C. Kelly. Frances Carter testified that she signed sheet 10 and identified Carolyn Johnson as the circulator. She further testified that no other persons were with Ms. Johnson when she signed the sheet. The circulator's affidavit was subscribed by Ardelia Jones. William Stevenson testified that he signed sheet 47 and identified Carolyn Jones as the circulator and further testified that no other woman was with her. The circulator's affidavit for sheet 47 was subscribed by Maxine Spencer.

On January 12, 1984, the hearing examiner announced his ruling on pending matters. Plaintiff's challenge to the signatures on sheet 1 were overruled on the ground that the objector had failed to properly specify the nature of his objections in the appendix of his petition. However, sheets 41 and 91 were struck in their entirety. On the other

sheets challenged by plaintiff, the hearing examiner sustained objections as to all specific signatures where plaintiff produced evidence, either in person or by affidavit, from voters purporting to show that a person other than the circulator named on the sheet had presented the petition to the voters. A total of 74 signatures were thus stricken. The examiner overruled objections to other signatures appearing on the sheets which were alleged to have been circulated by someone other than the person signing the circulator's oath.

On January 16, 1984, the board entered its decision finding that defendant had 35 signatures over the statutory minimum. On judicial review, the trial court struck all the remaining names on those sheets where there was evidence that someone other than the person signing the circulator's oath had, in fact, circulated the sheet. This resulted in an additional 94 signatures being stricken from the candidate's nominating petition and an order was entered prohibiting defendant's name from appearing on the ballot. We affirm the judgment of the trial court.

Section 7—10 of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 7—10) requires that anyone circulating a nominating petition execute a circulator's affidavit in which the circulator is to certify:

> "*** that the signatures on that sheet of the petition were signed in his presence, and are genuine, and that to the best of his knowledge and belief the persons so signing were at the time of signing the petitions qualified voters of the political party for which a nomination is sought." Ill. Rev. Stat. 1981, ch. 46, par. 7—10.

■ This portion of section 7—10 has been strictly enforced by the courts of this State, which have viewed the circulators' oath as an important way to safeguard fair and honest elections. In *Bowe v. Chicago Electoral Board* (1980), 79 Ill. 2d 469, 404 N.E.2d 180, the supreme court invalidated the signatures collected by a circulator who had failed to appear before a notary to have his signature acknowledged. Similarly, in *Havens v. Miller* (1981), 102 Ill. App. 3d 558, 429 N.E.2d 1292, various petitions were stricken because the circulators had failed to provide an affidavit certifying that the persons who had signed the petition were qualified primary electors. *Cf. Madden v. Schumann* (1982), 105 Ill. App. 3d 900, 435 N.E.2d 176 (requiring substantial compliance with the affidavit requirement).

Here, the situation is more serious than in *Bowe* and *Havens*. The sheets purportedly circulated by A. C. Kelly clearly evidenced a pattern of fraud, false swearing, and total disregard for the mandatory requirements of the Election Code. In one instance, Kelly went so far

as to white-out the name of the person who had obviously circulated the sheet and inserted his own name as circulator.

■ It is well established that the trial court may reverse a decision of the electoral board when it is contrary to the manifest weight of the evidence. (*Williams v. Butler* (1976), 35 Ill. App. 3d 532, 341 N.E.2d 394.) We believe plaintiff had clearly sustained his burden of proving Kelly had not personally circulated sheets 95, 113, and 5 and that Kelly's oath to the contrary was false. The testimony and affidavits adduced at the hearing could lead to no other conclusion. Accordingly, all the signatures on these sheets should have been stricken by the electoral board since the sheets did not contain the notarized affidavit of the actual circulator. This would have resulted in the deletion of an additional 32 signatures from the candidate's nominating petition.

Similarly, we believe the board erred in refusing to strike all the names on sheet 1. The unrebutted testimony of Oliver Gregory was that he had circulated this sheet, not the woman, Ardelia Jones that had signed the circulator's affidavit. The board had sustained objections to sheets 41 and 91 based on the similar testimony of Gregory but refused to strike sheet 1 because it had not been properly set forth in the objector's appendix. The hearing officer stated:

> "Since this particular objection does not fall within any of the three noted in the Board rules, I must deny it. I will note, however, that the testimony of Mr. Gregory was fairly clear, that the person who signed the affidavit, according to the records, are [*sic*] Ardelia Jones, was not the one who signed the sheet.
>
> So I am—obviously, the objector is not foreclosed from raising whatever points he may wish to do so in the future and in other forms. But based on my understanding of the Board practice and procedure and Board precedent, I am constrained to rule that way."

■ We find the trial court properly reversed the board's decision with respect to sheet 1. As the trial court correctly realized "when in the course of hearing objections to nominating papers, evidence beyond specific objections comes to the electoral board's attention, it cannot close its eyes and ears if evidence is relevant to the protection of the electoral process." Accordingly, we find the trial court properly deleted the 23 names appearing on sheet 1.

While we have some reservations with respect to whether other sheets were properly stricken in their entirety by the trial court, we do not deem it necessary to engage in a thorough analysis with respect to these sheets. The 55 signatures we have held to be properly

stricken from the candidate's petition already place her well below the statutory minimum requirement for having her name placed on the ballot.

In view of the foregoing, we affirm the trial court's judgment reversing the electoral board and ordering that the name of Patricia A. Dixon not be printed on the March 20, 1984, primary ballot.

Affirmed.

McGLOON, J., concurs.

JUSTICE CAMPBELL, dissenting:

I agree with the well-reasoned opinion of *Smith v. Board of Election Commissioners* (N.D. Ill., 1984), 587 F. Supp. 1136) and, therefore, would reverse the result reached by the circuit court and leave defendant's name on the ballot.[1]

In an order issued March 8, 1984, Judge Marvin Aspen of the United States District Court for the Northern District of Illinois ruled that the minimum signature requirements set forth in section 7—10(i) of the Election Code (Ill. Rev. Stat. 1983, ch. 46, par. 7—10(i)) are unconstitutional. (*Smith v. Board of Election Commissioners* (N.D. Ill., 1984), 587 F. Supp. 1136.) The board of election commissioners had determined that four named plaintiffs, candidates for the position of ward committeeman in the city of Chicago, will not appear on the ballot for the March 20, 1984, election because they failed to submit sufficient valid signatures on their nominating petitions to meet the 10% requirements of section 7—10(i).

Section 7—10(i) specifies that a candidate for the position of ward committeeman must submit petitions for nomination signed by not less than 10% of the primary electors of his party in his ward. The number of primary electors is equal to the total votes cast for the candidate from the same political party who received the most votes in the last regular election in that district. In contrast, section 7—10(i) requires that candidates for the position of township committeeman need submit nominating petitions signed by only 5% of the primary electors in their district. Plaintiffs argued before the district court that this legislative classification based on geography violated the

---

[1]The case at bar was consolidated for the purpose of oral argument only with another case which raised issues concerning the sufficiency of nominating petitions submitted for ward committeeman, *Watkins v. Burke* (1984), 122 Ill. App. 3d 499. I would also apply the rationale of *Smith* to that case.

equal protection clause of the fourteenth amendment.

The district court recognized that minimum signature requirements on nominating petitions may injure a voter's right to associate with the political party of their choice by excluding candidates from the ballot. (*Anderson v. Celebrezze* (1983), 460 U.S. 780, 75 L. Ed. 2d 547, 103 S. Ct. 1564.) The right of a party or an individual to be placed on the ballot is entitled to protection since it is intertwined with the associational rights of voters. *Lubin v. Panish* (1974), 415 U.S. 709, 716, 39 L. Ed. 2d 702, 708, 94 S. Ct. 1315, 1320.

In evaluating the constitutionality of ballot access restrictions the district court followed the analysis utilized in *Anderson v. Celebrezze*, which required that a court must:

> "first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights." (*Anderson v. Celebrezze* (1983), 460 U.S. 780, 789, 75 L. Ed. 2d 547, 558, 103 S. Ct. 1564, 1570.)

A court also must consider if there is a less burdensome alternative through which a State might reach its goals. 460 U.S. 780, 805, 75 L. Ed. 2d 547, 568, 103 S. Ct. 1564, 1578-79.

The district court found important the State's interest in establishing a signature requirement to insure that ballots remain within manageable, understandable limits, to avoid voter confusion, to eliminate frivolous candidates and to require a modicum of support prior to placing a candidate's name on the ballot. See *Lubin; Bullock v. Carter* (1972), 405 U.S. 134, 145, 31 L. Ed. 2d 92, 101, 92 S. Ct. 849, 857; *Jenness v. Fortson* (1971), 403 U.S. 431, 442, 29 L. Ed. 2d 554, 562, 91 S. Ct. 1970, 1976.

The court found, however, that the evidence in the record indicated no significant differences between the offices of ward committeeman and township committeeman which would explain the disparate signature requirements and the more difficult burden placed on Chicago voters and candidates than upon township voters and candidates. The court was not convinced that gathering signatures in townships is more difficult than gathering signatures in the city. Nor was there any evidence that voter confusion, long ballots and frivolous

candidates are a greater problem in the city than in the townships. Such an unjustified geographical classification, the court concluded, is contrary to the equality of citizens in the exercise of political rights. (*Moore v. Ogilvie* (1969), 394 U.S. 814, 818-19, 23 L. Ed. 2d 1, 6, 89 S. Ct. 1493, 1496.) The court determined that there are several less burdensome alternatives, including the elimination of the disparate signature requirements, by which the State could achieve its significant interests. Since the 5% rule presumably achieves the State's interests in the townships, the court reasoned that to apply the 5% rule to the city wards would allow the State to realize its interests while reducing the unequal burden on Chicago candidates. The district court granted plaintiffs' motions for preliminary injunctive relief and ordered that certain plaintiff candidates' names be placed on the ballot for the upcoming election.

Counsel for defendant Patricia Dixon brought the *Smith* decision to the attention of this court and although defendant has not challenged the constitutionality of section 7—10(i), I am constrained to adopt the rationale employed by the Federal district court. The weight of the burden of the 10% signature requirement and the State's inability to justify the disparate signature requirements between ward and township committeeman warrant *sua sponte* consideration of the constitutionality of section 7—10(i).

I recognize that as a general rule decisions of the United States district and circuit courts are not binding upon Illinois courts. (*City v. Chicago v. Groffman* (1977), 68 Ill. 2d 112, 383 N.E.2d 891.) Nevertheless,[2] this court should give attention to a ruling of the Federal district court which finds an Illinois statute to be unconstitutional.

Defendant has informed this court that she has moved to intervene in the action before Judge Aspen. While the practice of pursuing identical relief in separate courts is frowned upon, I must note that if her intervention in the Federal district court is allowed, defendant's name will appear on the ballot on March 20, 1984. During oral argument before this court, counsel for the defendant represented to this court that once the challenged signatures are removed, defendant's petition will still have sufficient valid signatures to meet the 5% rule. Accordingly, I would reverse the decision of the circuit court and order that defendant's name be placed on the ballot.

---

[2]It is clear that a court may take judicial notice of other proceedings in other courts. *People v. Davis* (1976), 65 Ill. 2d 157, 164, 357 N.E.2d 792, 796.