HERBERT HUSKEY et al., Petitioners-Appellants, v. MUNICIPAL OFFICERS ELECTORAL BOARD FOR THE VILLAGE OF OAK LAWN et al., Respondents-Appellees.

First District (3rd Division)   No. 87—823

Opinion filed May 20, 1987.

Franklin J. Lunding, Jr., of Chicago, for appellants.

Patrick A. Lucansky and Thomas P. Bayer, both of Klein, Thorpe & Jenkins, Ltd., and Burton S. Odelson and Michael R. Donahue, both of Odelson & Sterk, Ltd., both of Chicago, for appellees.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Objector Joseph Vogrich filed written objections to the nominating petition of petitioner Herbert Huskey, a candidate for village trustee of Oak Lawn in the April 7, 1987, election. The electoral board invalidated certain individual nomination petition signatures, and 8 out of 10 sheets of signatures in their entirety. As a result, the board found petitioner had an insufficient number of electors' signatures and ordered that petitioner's name not be placed on the ballot. The circuit court of Cook County upheld the board's decision not to include petitioner's name on the ballot and also found that the remaining two sheets of signatures should be invalidated in their entirety. Petitioner appeals. This court granted petitioner's request for an expedited hearing, and on March 31, 1987, we entered an order affirming the trial court judgment and stating that an opinion would follow.

On January 19, 1987, petitioner filed the nominating papers for his candidacy for village trustee in the April 7, 1987, election. These

papers included 10 petition forms with 20 signatures on each form. Petitioner was required to have 125 valid signatures. Each of the 10 petitions included a sworn statement signed by Mary Walsh, certifying that the signatures on the sheet were signed in her presence and were genuine. On February 2, 1987, objector filed objections to the nominating papers. Petitioner subsequently filed a motion to strike and dismiss the objections.

On February 9, 1987, a binder check was conducted, and a preliminary result revealed that petitioner had 132 signatures which were tentatively found to be valid. Hearings were held by the electoral board on February 11 and February 18, 1987. In response to petitioner's motion, the board struck several of the objections. The parties also stipulated that two additional signature objections should be sustained, bringing the total down to 130 signatures. Based upon the evidence presented, the board also found that the binder count was erroneous in that two invalidated names were actually valid and that eight other signatures should have been invalidated. The eight signatures which the board invalidated had not been challenged by the objector. This brought the total down to 124 signatures, which was one less than the statutory requirement.

Furthermore, testimony from over 30 witnesses revealed that Walsh knowingly verified false signatures and falsely swore that she circulated the petition sheets. Witnesses stated that they had signed for other members of their family in the presence of the circulator and that petitioner's granddaughter, Cheryl Novak, and not Walsh, had circulated many of the petition sheets.

Walsh testified that she did not understand what an individual's signing "in their own proper person" meant. In some cases, Novak told people they could sign for their spouses or children. Walsh and Novak collected 400 signatures. About half the time the petitions were actually presented by Novak, and not by Walsh herself. Walsh saw some of the people sign for their family members and stated that some of the names were not signed in her presence. Walsh agreed that the affidavit's statement that the signatures were "genuine" meant that they were signed by the person named. Walsh further testified that according to her understanding of the requirements, she believed every signature was valid. Novak testified that she accompanied Walsh in obtaining signatures, but that Walsh was the circulator. She told some people they could sign for family members because she believed that this was not improper.

Based on this testimony, and on this court's holding in *Fortas v. Dixon* (1984), 122 Ill. App. 3d 697, 462 N.E.2d 615, the board found

that the testimony clearly disclosed a pattern of fraud, false swearing, and a total disregard for the election law by the circulator, Mary Walsh. The board held that 8 of the 10 sheets were invalid in their entirety. Two of the sheets were not invalidated in their entirety by the board, and a total of 35 valid signatures remained. Because this number was insufficient, the board ruled that petitioner's name should not have been placed on the ballot. Objector challenged the board's decision not to strike the two remaining sheets.

The trial court found that a pattern of irregularity and false swearing had been shown and agreed that *Fortas v. Dixon* required the invalidation of all the sheets circulated by Mary Walsh. The court also found that the board should have struck the remaining two sheets. The court found further that the board could properly review issues beyond the specific challenges listed by the objector. The trial court concluded that the board's decision not to include petitioner's name on the ballot was not against the manifest weight of the evidence.

■ On administrative review, the findings and decision of the electoral board will not be disturbed unless those findings are against the manifest weight of the evidence. Ill. Rev. Stat. 1985, ch. 46, par. 10—10.1; *Williams v. Butler* (1976), 35 Ill. App. 3d 532, 341 N.E.2d 394; *Wiseman v. Elward* (1972), 5 Ill. App. 3d 249, 283 N.E.2d 282.

Section 10—4 of the Illinois Election Code sets forth the requirements of a candidate's petition for nomination which must be filed as a prerequisite to the candidate's name being placed on the ballot. (Ill. Rev. Stat. 1985, ch. 46, par. 10—4.) A petition includes sheets containing signatures of qualified primary electors "in their own proper persons only." (Ill. Rev. Stat. 1985, ch. 46, par. 10—4.) The circulator must sign a statement under oath at the bottom of each petition sheet, certifying that the signatures on the sheet were signed in her presence and are genuine. (Ill. Rev. Stat. 1985, ch. 46, par. 10—4.) The requirements of section 10—4 are mandatory. (*Schumann v. Kumarich* (1981), 102 Ill. App. 3d 454, 430 N.E.2d 99; see also *Bowe v. Chicago Electoral Board* (1980), 79 Ill. 2d 469, 404 N.E.2d 180 (finding section 7—10, a section with a similar circulator's affidavit requirement, to be mandatory).) This rule was clearly violated here, where the circulator permitted individuals to sign their own names and the names of family members who were not present, and when someone other than the affiant actually presented the petition to signers. The question before us, then, concerns the consequences of such impropriety.

Section 10—4 of the Election Code provides that the result of noncompliance with the petition requirements is that: "No signature shall be valid or be counted in considering the validity or sufficiency of such petition unless the requirements of this Section are complied with." Ill. Rev. Stat. 1985, ch. 46, par. 10—4.

■ We find that the present case is controlled by our holding in *Fortas v. Dixon*. There, the invalidation of entire sheets, and not just individual signatures, was permitted because of clear evidence of fraud permeating the entire petition circulation process. False affidavits were filed in connection with the circulation of the sheets. Testimony established that many of the affidavits on the sheets were signed by someone other than the person who actually presented the sheets to the signers. We held that entire sheets could be invalidated because the testimony clearly evidenced a pattern of fraud, false swearing, and total disregard for the mandatory requirements of the Election Code. See *Bowe v. Chicago Electoral Board* (1980), 79 Ill. 2d 469, 404 N.E.2d 180; *Havens v. Miller* (1981), 102 Ill. App. 3d 558, 429 N.E.2d 1292.

Similarly, the circulator's affidavits here were false. The circulator's affidavit is one of the primary safeguards against fraudulent nomination petitions. (*Fortas v. Dixon* (1984), 122 Ill. App. 3d 697, 462 N.E.2d 615; *Havens v. Miller* (1981), 102 Ill. App. 3d 558, 429 N.E.2d 1292.) For this reason, a circulator's false affidavit taints the entire sheet. Here, the circulator admitted that at least half of the time, she was not the person who presented the petition for signature. Furthermore, she acknowledged that many of the signatures were not genuine, *i.e.*, were signed by someone other than the person named. We agree with the trial court's finding that this evidence constitutes a pattern of disregard for the mandatory requirements of the Election Code and affects the integrity of the political process. The fact that the circulator misunderstood her instructions or was not properly instructed and thus did not have fraudulent intent does not alter our holding.

■ Election laws exist to preserve the integrity of our government. (*Glenn v. Radden* (1984), 127 Ill. App. 3d 712, 469 N.E.2d 616.) Before a candidate is denied a place on the ballot, the rights of both the candidate and the voters must be weighed in the balance. (*Anderson v. Schneider* (1977), 67 Ill. 2d 165, 365 N.E.2d 900.) In addition, the State's interest in regulating elections must be recognized. The crucial question is whether it is conceivable that removing the candidate from the ballot has a rational relationship to a legitimate governmental objective. *Havens v. Miller* (1981), 102 Ill.

App. 3d 558, 429 N.E.2d 1292.

The general purpose of the Election Code's signature requirements is to provide an orderly procedure by which qualified persons seeking public office may enter elections. (See *Lewis v. Dunne* (1976), 63 Ill. 2d 48, 344 N.E.2d 443.) The petitions signed by electors are intended to serve a particular purpose. The primary purpose of the signature requirement is to reduce the electoral process to manageable proportions by confining ballot positions to a relatively small number of candidates who have demonstrated initiative and at least a minimal appeal to eligible voters. (*Merz v. Volberding* (1981), 94 Ill. App. 3d 1111, 419 N.E.2d 628.) The obvious purpose of the requirement that each person may only sign his or her own name is to provide an accurate showing of the candidate's support in the community.

In the present case, the petitions fail to provide an accurate showing of the candidate's support due to the improper methods by which the petitions were circulated. The circulator's affidavits on the sheets are meaningless in light of the testimony presented before the board. Thus, the State's legitimate interest in guarding the integrity of the electoral . system has a rational relationship to the board's removal of petitioner's name from the ballot. We hold that the trial court correctly found that the signatures on the petitions signed by Walsh should be struck.

In light of our holding that all of the sheets were properly invalidated, it is unnecessary to address petitioner's arguments concerning the board's decision as to the individual line objections.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RIZZI and FREEMAN, JJ., concur.