DAVID S. CANTER, Petitioner-Appellant, v. COOK COUNTY OFFICERS ELECTORAL BOARD et al., Respondents-Appellees.

First District (1st Division)   No. 88—0410

Opinion filed May 16, 1988.

Thomas E. Johnson and Steven Saltzman, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and Lawrence T. Krulewich, Assistant State's Attorneys, of counsel), for appellees Cook County Officers Electoral Board, Stanley T. Kusper, Jr., and Richard M. Daley.

Rock, Fusco & Reynolds, of Chicago (John J. Moran, Jr., and Kevin W. Horan, of counsel), for appellee Mark Spadoro.

JUSTICE BUCKLEY delivered the opinion of the court:

Objector Mark Spadaro filed a written objection on December 21, 1987, to the nominating petition of petitioner David Canter, a democratic candidate for circuit court judge of Cook County in the March 15, 1988, election. The Cook County Officers Electoral Board (board) invalidated three sheets of petition signatures in their entirety, and as a result, ordered that petitioner's name be removed from the ballot due to an insufficient number of electors' signatures. The circuit court upheld the board's decision not to include petitioner's name on the ballot, and petitioner appeals. This court granted petitioner's request for an expedited hearing, and on March 9, 1988, we entered an order affirming the circuit court's judgment and stating a written decision would follow.

On December 14, 1987, petitioner filed the nominating papers for his candidacy. In his written objection, objector alleged that the nominating petition contained various improprieties including that on several sheets, the circulator's signature was not in proper person and not genuine, and that on sheets 1 and 3, the circulator's affidavits were false and perjurious, thereby reducing the number of valid signatures below the statutory minimum of 500. (Ill. Rev. Stat. 1985, ch. 46, par. 7—10(h).) In response, petitioner fled a motion to strike and dismiss certain portions of objector's petition, which was ultimately denied. A binder check was subsequently conducted, and the results revealed that 60 valid signatures remained on petition sheets 1, 2, and 3, leaving 560 of the original signatures. On December 26, 1987, hearings convened on the validity of the nominating petition.

In particular, the following testimony was elicited. Amanda Cotton Allen testified that the signature on sheet 3, line 2, was not hers. Georgia White and Yolanda Elston verified their signatures on lines 4 and 7 of sheet 3, but testified that signatures purporting to be theirs on lines 18 and 22 were not. Ms. Elston also recognized the signature of June Adams to be genuine on line 8 of sheet 3, but stated that Ms. Adams' purported signature on line 16 of sheet 3 was not genuine.

Othello Hamilton, the purported circulator of sheets 1 through 3, was subpoenaed to testify at the hearing but refused to do so, invoking the fifth amendment. Thereafter, John J. Moran, Jr., temporarily withdrew as counsel for objector and testified that Hamilton had told him on January 4, 1988, that he had been approached by a person who offered him $200 to obtain 500 signatures on petitioner's behalf. He stated that he accepted the offer and used three friends to obtain the signatures. Hamilton told Moran that he quickly signed all the petition forms even though he did not circulate them. When Moran

asked Hamilton "Are you saying that you did not circulate these? You did not have the people sign them in front of you?" Hamilton replied, "[T]hat's right."

Petitioner presented the testimony of Michael Guajardo, who gathered affidavits from 27 of the 60 remaining signers of petition sheets 1, 2, and 3, verifying their signatures and swearing that the sheets had been circulated by Othello Hamilton. In collecting the affidavits, Guajardo testified that he was accompanied by a notary, and either Hamilton was present or he showed the affiants Hamilton's photograph. Guajardo also stated that he went to some residences with petitioner, who showed the affiants, after they signed the affidavit, a photo of himself with the late Mayor Harold Washington. Ms. Elston testified, however, that the photograph was shown to her prior to signing the affidavit. ·

The board rendered its decision on January 22, 1988. It found that on sheet 1, the signatures on lines 18 through 25 appeared to be written in the same handwriting, which resembled that of Hamilton, and that on sheet 3, six names appeared twice, and lines 10 through 25 also appeared to be written in the same hand as that of Hamilton. The court pointed out that no affidavits were offered by petitioner for those portions of sheets 1 and 3 enumerated above. A negative inference was also drawn by the board from Hamilton's refusal to testify. The court therefore struck the circulator's oaths on sheets 1, 2 and 3, as the testimony of White and Elston as well as the apparent irregularities "evidenced a pattern of false swearing *** making suspect all pages purportedly circulated by Othello Hamilton." After stipulations were entered, the petitioner's nominating papers contained a total of 491 valid signatures, 9 below the statutory minimum, and thus, the board removed petitioner's name from the ballot.

The circuit court denied petitioner's motion to reverse the board's ruling, and on February 5, 1988, petitioner appealed to this court. On the same day, petitioner filed a motion for direct appeal to the Illinois Supreme Court pursuant to Rule 302(b) (87 Ill. 2d R. 302(b)). That motion was denied on February 26, 1988. For the following reasons, we affirm the judgment of the circuit court.

■■ Petitioner initially contends that the board violated its own rules of procedure by invalidating all 22 signatures on sheet 2 of the nominating petition where no specific objection to the circulator's oath was filed with respect to these signatures. In so arguing, petitioner ignores this court's clear mandate in *Fortas v. Dixon* (1984), 122 Ill. App. 3d 697, 462 N.E.2d 615. In *Fortas*, the electoral board, based on its understanding of board rules, refused to strike a sheet of

the candidate's nominating petition because it had not been included in the objector's objection, despite evidence which established that the sheet in question had not been circulated by the individual who signed the circulator's affidavit. This court upheld the trial court's reversal of the board's decision, stating:

> " '[W]hen in the course of hearing objections to nominating papers, evidence beyond specific objections comes to the electoral board's attention, it cannot close its eyes and ears if evidence is relevant to the protection of the electoral process.' " (122 Ill. App. 3d at 701, 462 N.E.2d at 618.)

Likewise, the board here could not "close its eyes and ears" to the evidence that Othello Hamilton, the purported circulator of sheets 1, 2, and 3, did not in fact circulate the petition.

Petitioner next argues that the board erred in invalidating all of the voters' signatures on petition sheets 1 through 3, as opposed to only those signatures it found not to be genuine. Again, *Fortas v. Dixon* (1984), 122 Ill. App. 3d 697, 462 N.E.2d 615, as well as *Huskey v. Municipal Officers Electoral Board* (1987), 156 Ill. App. 3d 201, 509 N.E.2d 555, are controlling in this regard. Both decisions held that when the sheets of a nominating petition submitted by a purported circulator evidence a pattern of fraud, false swearing and total disregard for the mandatory requirements of the Election Code (Ill. Rev. Stat. 1985, ch. 46, par. 1—1 *et seq.*), the sheets purportedly circulated by that individual should be stricken in their entirety.

Similarly, here, there was ample support for the board's finding that Hamilton's oath was "incredible," making all signatures on the first three sheets of the petition invalid. According to Mr. Moran, Hamilton admitted that he did not circulate any of the petition sheets. In addition to this admission, the testimony of Ms. Elston and Ms. White, as well as the sheets themselves, and the binder check, indicate a pattern of forgeries on petition sheets submitted by Hamilton. Further, Hamilton's refusal to testify supports the board's finding that improper methods were used to collect the signatures.

■ ■ Petitioner attempts to distinguish *Fortas* in two respects. First, petitioner argues that unlike the candidate in *Fortas,* he did not stand "mute," but rather offered live and affidavit testimony of 30 witnesses that many of the signatures on petition sheets 1 through 3 were genuine and obtained by the circulator in question. Yet, in an administrative review proceeding, it is not the function of either the trial court or the appellate court to reweigh the evidence or assess the credibility of the witnesses. (*Neff v. Miller* (1986), 146 Ill. App. 3d 395, 496 N.E.2d 1073.) Rather, the findings and decision of the elec-

toral board will not be disturbed unless those findings are against the manifest weight of the evidence. (*Huskey v. Municipal Officers Electoral Board* (1987), 156 Ill. App. 3d 201, 509 N.E.2d 555.) We do not believe that the board's conclusions here were contrary to the evidence presented.

Petitioner next asserts that the board here, as opposed to the one in *Fortas,* "did not find that the circulator did not circulate these sheets, but instead only that certain signatures were non-genuine." However, as previously noted, the board found that based on the evidence, Hamilton's oath was "incredible." Contrary to petitioner's argument, the board did not only find that certain signatures were not valid, but it also found that the testimony of Ms. Elston and Ms. White in addition to the apparent irregularities on sheets 1 and 3 evidenced a pattern of false swearing making suspect all pages purportedly circulated by Hamilton.

■ Petitioner's reliance on *Dooley v. McGillicudy* (1976), 63 Ill. 2d 54, 345 N.E.2d 102, is misplaced. In *Dooley,* the candidate's nominating petition sheets failed to comply with a section of the Election Code requiring attestations that the persons signing the petition were qualified voters of the democratic party. Despite this deficiency, the supreme court ordered that it was insufficient to warrant the candidate's removal from the ballot. Yet, here, it is the circulator's oath, and not just declaration of party affiliation, that the board found improper. As noted in *Fortas* and *Huskey,* the circulator's affidavit under section 7—10 of the Election Code (Ill. Rev. Stat. 1985, ch. 46, par. 7—10) is mandatory and must be strictly enforced as it ensures the fairness and honesty of the entire election process.

■ Finally, petitioner, relying on *Baxter v. Palmigiano* (1976), 425 U.S. 308, 47 L. Ed. 2d 810, 96 S. Ct. 1551, and *Mayer v. Angelica* (7th Cir. 1986), 790 F.2d 1315, contends that the board erred in drawing a negative inference against petitioner from Hamilton's refusal to testify. Initially, we point out that the adverse inference drawn from Hamilton's invocation of his fifth amendment privilege goes only to the issue of Hamilton's credibility, not to that of petitioner. And neither *Baxter* nor *Mayer* establishes that a negative inference may not be drawn against a nonparty from his silence in an administrative proceeding. Rather, in *Baxter,* the court held that a prison inmate's silence at a disciplinary proceeding *may* be used against him, while in *Mayer,* the court held that a codefendant's silence could not be used, without other evidence, as a foundation for the admission of documents he had written.

Moreover, as noted in *Giampa v. Illinois Civil Service Comm'n*

(1980), 89 Ill. App. 3d 606, 613, 411 N.E.2d 1110, 1116, cited by the board in its decision, "[t]he constitutional guarantee against self-incrimination protects a witness from being forced to give testimony leading to the imposition of criminal penalties, but it does not insulate a witness from every possible detriment resulting from his testimony." Although it was a party that refused to testify in *Giampa*, it is apparent that the trier of fact in a civil case, unlike a criminal case, is not barred from considering a witness' refusal to testify. Further, the board's decision did not rest on Hamilton's silence alone, but rather on all the evidence presented.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

STAMOS* and O'CONNOR, JJ., concur.

---

*This opinion was prepared and concurred in prior to Justice Stamos' resignation from the court.