FIFTH DIVISION
March 5, 2010

1-10-0002

| | | |
|---|---|---|
| BRIDGET MITCHELL, | ) | Appeal from |
| | ) | the Circuit Court |
| Petitioner-Appellant, | ) | of Cook County. |
| | ) | |
| v. | ) | 09 COEL 61 |
| | ) | (09 COEB JUD 04) |
| THE COOK COUNTY OFFICERS ELECTORAL | ) | |
| BOARD, and its Members, DAVID ORR, by and through | ) | The Honorable |
| his designee, Daniel P. Madden; ANITA ALVAREZ, | ) | Maureen Ward Kirby, |
| by and through her designee, Patrick Driscoll; and | ) | Judge Presiding. |
| DOROTHY BROWN, by and through her designee, | ) | |
| Mary A. Melchor; DAVID ORR, as Cook County | ) | |
| Clerk; BOARD OF ELECTIONS COMMISSIONERS | ) | |
| FOR THE CITY OF CHICAGO; and BONNIE CAROL | ) | |
| McGRATH, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

PRESIDING JUSTICE TOOMIN delivered the opinion of the court:

The case *sub judice* calls upon us to exercise our power to review a decision of the County Officers Electoral Board (Board), which struck tainted nominating petitions, but ultimately allowed the candidate for judicial office to remain on the ballot. Bonnie Carol McGrath initiated a candidacy for the office of judge[1] of the circuit court of Cook County by submitting nominating papers to the Electoral Board. These papers included, *inter alia*, her statement of candidacy and nominating petitions signed by qualified citizens of Cook County. In turn, Bridget Mitchell filed objections to McGrath's nominating papers.

---

[1] McGrath submitted nominating papers for two separate vacancies on the circuit court, the "Hayes" vacancy and the "Berland" vacancy. The present appeal concerns only the "Hayes" vacancy.

1-10-0002

The objector's petition set forth numerous alleged violations of the Election Code (10 ILCS 5/1-1 *et seq.* (West 2008)) stemming from the form and substance of McGrath's nominating papers. One general objection, set forth in several paragraphs, was directed to McGrath's statement of candidacy and its omission of any reference to the names she used in prior candidacies. The majority of the allegations centered upon the petition sheets, challenging the validity and genuineness of the signatures and addresses contained thereon, claiming irregularities as to the signing of the petitions by a notary public, and alleging "a pattern of fraud and disregard of the Election Code." Accordingly, the petition averred that, as a result of the various and sundry irregularities in the petitions, McGrath's nominating papers were supported by fewer than the minimum number of "validly collected signatures of qualified and duly registered voters of the Cook County Judicial Circuit." The petition sought to have McGrath's nominating papers declared "insufficient and not in compliance with the laws of the State of Illinois" and to have her name be stricken as a candidate and "be not printed upon the official ballot for the General Primary Election to be conducted on February 2, 2010." Ultimately, the Board rendered a decision. As that decision thoroughly and competently outlines the machinations leading to that point, we rely upon the Board's recitation of the facts in providing background. Moreover, neither side challenges the Board's account of the proceedings.

Upon receipt of the petition, the Board referred the matter for a "Registration Record Check" and report back to the Board. Importantly, the nominating petitions at issue were circulated for the benefit of three candidates, not just for McGrath's candidacy. The record check revealed a total of 7,048 signatures. The objector challenged 3,857 of those signatures. The

2

record check sustained 1,824 of the objections, "leaving 5,224 presumably valid signatures at this point, which is 1,956 above the minimum of 3,268 required" for the office of judge.

Next, the Board turned to Mitchell's allegation that some of the circulators did not appear in person before a notary public. The Board received testimony on this issue from McGrath, Christine Athanasoulis, one of the circulators, and Kari Ann Browning, a notary public whose seal was affixed to 226 of McGrath's petition sheets. According to the Board:

"The testimony, which is uncontested and undisputed, can be summarized as follows: [McGrath] had 11 other persons circulate petitions; when those circulators had finished with their sheets, they turned them into the Candidate, already signed by them; the Candidate transmitted them to Ms. Browning who notarized them without any of the circulators being present. This happened at times when [McGrath] went to Ms. Browning to notarize her own sheets. Ms. Athanasoulis individually testified that she never appeared before the Notary in respect to the sheets she circulated ***."

Based upon the testimony presented, the Board determined it was "proper and well within its power to strike all of the sheets circulated by [McGrath] and/or notarized by Ms. Browning." Furthermore, the Board observed:

"The behavior testified to is in direct contradiction of the requirements of the Election Code and the Notary Act, and it amounts to an intolerable duplicity on the party of the perpetrators. For this to be done by a candidate for judicial office is particularly shocking."

The Board determined that if all the sheets circulated by McGrath or notarized by Browning were

struck, an additional 1,406 signatures would be lost. Subtracting these from the prior subtotal of 5,224 left 3,818 valid signatures, which was still 550 in excess of the minimum 3,268 required for the office.

The Board then turned to Mitchell's contention that, regardless of the sufficiency of the remaining signatures, the conduct underlying the presentation of the petitions from other circulators to the notary for attestation without the circulators present warranted the termination of her candidacy and the removal of her name from the ballot. The Board noted the unique circumstance presented where:

> "[McGrath] was running as part of a ticket and the petition has thousands of valid signatures collected by the other candidates on the ticket and their supporters, who are accused of no wrong-doing. Each of these signatures supports the McGrath candidacy, independent of and separate from any act on her part. A candidacy is not the exclusive property of the candidate, even if he or she stands to gain the most from it. A candidacy is an expression of the popular will, of the signers of the petition, as well as of the candidate. These signers may well be disheartened should they learn of what [McGrath] has done, but they will be able to express themselves as to that at the polls."

Furthermore, the Board concluded that the cases cited by Mitchell dictated that the proper course of action was to strike those petition sheets tainted by the misconduct. Additionally, the Board noted that "The candidacies in those cases went down because of a lack of valid signatures; none of them was directly terminated."

4

The Board also explained that its decision allowing the candidacy to stand was not intended to reflect that it was "excusing or minimizing the misconduct." Instead, the Board stated, "We have done everything that we believe we are empowered by the law to do." Although mindful of its own limitations, the Board nonetheless recognized that "Those organs of government with farther-reaching power than ours may choose to terminate the candidacy, or to instruct us that we have the power to do so." Thus the Board candidly predicted, "[W]e fully expect that this matter will be pursued by those permanent agencies empowered to do so." Consequently, petitioner's objections were overruled. McGrath's nominating papers were declared valid and her name was ordered to be printed on the ballot for the primary election to be held on February 2, 2010.

Thereafter, Mitchell sought review in the circuit court of Cook County pursuant to section 10-10.1 of the Election Code (10 ILCS 5/10-10.1 (West 2008)). On December 29, 2009, the circuit court affirmed the Board's decision as not being against the manifest weight of the evidence and not clearly erroneous. Mitchell then filed an expedited appeal before us. On January 15, 2010, we entered an order affirming both the Board's decision as well as the circuit court's affirmance. We now supplement our prior order with this opinion setting forth the legal basis and analysis that guide our decision.

Electoral boards are considered to be administrative agencies. *Cinkus v. Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 209, 886 N.E.2d 1011, 1017 (2008). While the provisions of section 10-10.1 do not expressly incorporate the procedures delineated in the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2008)), our supreme court has

concluded that the procedure is essentially the same. *Cinkus*, 228 Ill. 2d at 210, 886 N.E.2d at 1017-18. In appeals of decisions of the circuit court, reviewing decisions of administrative boards, it is axiomatic that we review the board's decision and not the circuit court's. *Cinkus*, 228 Ill. 2d at 212, 886 N.E.2d at 1019. As noted, there is no dispute as to the factual findings of the Board. Consequently, because decisions of administrative agencies on questions of law are afforded less deference, our review is *de novo*. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205, 692 N.E.2d 295, 302 (1998).

Mitchell's arguments on appeal are that the Board erred where it (1) failed to terminate McGrath's candidacy in its entirety; and (2) failed to strike McGrath's statement of candidacy. On the first point, Mitchell suggests the termination of the candidacy was warranted given McGrath's "intolerable duplicity" and pattern of fraud, her misconduct during the objection process, and her alleged violations of the Rules of Professional Conduct. Putting aside the substance of these arguments, we note that these considerations are at least arguably outside the scope of the Board's function. Section 10-10 sets out the Board's function in this regard, providing, in relevant part:

> "The electoral board shall take up the question as to whether or not the
>
> certificate of nomination or nomination papers or petitions are in proper form, and
>
> whether or not they were filed within the time and under the conditions required by
>
> law, and whether or not they are the genuine certificate of nomination or
>
> nomination papers or petitions which they purport to be, and whether or not in the
>
> case of the certificate of nomination in question it represents accurately the

6

decision of the caucus or convention issuing it, and *in general shall decide whether or not the certificate of nomination or nominating papers or petitions on file are valid or whether the objections thereto should be sustained* and the decision of a majority of the electoral board shall be final subject to judicial review as provided in Section 10-10.1 The electoral board must state its findings in writing and must state in writing which objections, if any, it has sustained." (Emphasis added.) 10 ILCS 5/10-10 (West 2008).

In the present case, it is manifest that the Board clearly adhered to the legislative mandate. We observe, as did the Board, that the petitions in this case presented a unique situation in that McGrath was part of a ticket with two other candidates. Nevertheless, Mitchell asserted very specific objections as to the form and substance of McGrath's petitions to the Board. The Board conscientiously considered those objections and took appropriate curative action based upon established decisional law. Having sustained some of the objections and overruled others, the Board, as precedent required, declared the nomination papers valid based upon the presence of sufficient signatures to support the candidacy. Consequently, the complaints raised by this appeal are not relevant to our review of the Board's decision. That is to say, Mitchell's claim that the Board erred in not terminating McGrath's candidacy is not supported by the record or the statutes defining the function and powers of the Board. See 10 ILCS 5/10-10 (West 2008).

The Board's decision as to the proper remedy in light of the misconduct and irregularities in the petitions was to strike those petitions tainted by the improper notarizations, over and above those objections previously sustained. In arriving at this conclusion, the Board considered several

cases, including *Fortas v. Dixon*, 122 Ill. App. 3d 697, 462 N.E.2d 615 (1984); *Huskey v. Municipal Officers Electoral Board*, 156 Ill. App. 3d 201, 509 N.E.2d 555 (1987); and *Canter v. Cook County Officers Electoral Board*, 170 Ill. App. 3d 364, 523 N.E.2d 1299 (1988). Our review of these cases demonstrates that they are supportive of the Board's determinations and choice of remedy in the case *sub judice*.

In *Fortas*, the board overruled certain objections to the candidate's petitions, struck two petitions, and struck certain individual signatures where there was evidence someone other than the named circulator presented the petition. In turn, the trial court struck the entire sheets where individual signatures stricken by the board. *Fortas*, 122 Ill. App. 3d at 699-700, 462 N.E.2d at 616-17. The result of the trial court's action was to leave the candidate with an insufficient number of signatures. Consequently, the trial court ordered that the candidate's name be prohibited from appearing on the ballot. *Fortas*, 122 Ill. App. 3d at 700, 462 N.E.2d at 617. The appellate court affirmed the trial court as to two of the sheets, but expressed reservations as to the trial court's striking of the entirety of the other sheets at issue. *Fortas*, 122 Ill. App. 3d at 701, 462 N.E.2d at 618. Nevertheless, the appellate court concluded that the properly stricken sheets left the candidate below the minimum signature threshold for appearing on the ballot. *Fortas*, 122 Ill. App. 3d at 701-02, 462 N.E.2d at 618.

In *Huskey*, 8 out of 10 of the candidate's petitions were invalidated because of a "pattern of fraud, false swearing, and a total disregard for the election law by the circulator." *Huskey*, 156 Ill. App. 3d at 204, 509 N.E.2d at 556. The result was to leave the candidate with an insufficient number of signatures to support his candidacy. Therefore, the board in *Huskey* concluded the

8

candidate's name should not appear on the ballot due to the insufficiency. *Huskey*, 156 Ill. App. 3d at 204, 509 N.E.2d at 556. The appellate court affirmed, finding the entire sheets tainted by a false circulator's affidavit were properly stricken, regardless of the absence of any proof of a fraudulent intent on the part of the circulator. *Huskey*, 156 Ill. App. 3d at 205, 509 N.E.2d at 557. Moreover, the court concluded, "the State's legitimate interest in guarding the integrity of the electoral system has a rational relationship to the board's removal of petitioner's name from the ballot." *Huskey*, 156 Ill. App. 3d at 206, 509 N.E.2d at 558.

In *Canter*, the board struck three pages of signatures gathered by a particular circulator based on a pattern of "apparent irregularities" that raised doubts about the genuineness of those pages. This ruling, coupled with stipulations entered into by the parties, left the candidate with fewer than the minimum number of required signatures and his name was removed from the ballot. *Canter*, 170 Ill. App. 3d at 367, 523 N.E.2d at 1301. The circuit court concurred in the Board's action. In turn, the appellate court, relying in part on *Fortas* and *Huskey*, found that the board properly struck the challenged sheets in their entirety. *Canter*, 170 Ill. App. 3d at 368, 523 N.E.2d at 1301. Therefore, the circuit court's ruling affirming the board's decision removing the candidate's name due to insufficient signatures was affirmed. *Canter*, 170 Ill. App. 3d at 370, 523 N.E.2d at 1303.

The clear teaching of these cases is in harmony with the action taken by the Board as to McGrath's candidacy. Contrary to Mitchell's contention, nothing in the record compels the conclusion that the Board was somehow required to terminate McGrath's candidacy. While the record demonstrates a pattern of irregularities related directly to McGrath and Browning, no such

pattern was shown as to the entire universe of the nominating petitions. Moreover, Mitchell has not offered a basis in the Board's enabling statutes or in the law for such a requirement. As noted, the function of the Board is to determine whether the nominating papers are valid and if the objections ought to be sustained. See 10 ILCS 5/10-10 (West 2008). In the absence of evidence that the nominating papers were invalid or the presence of sufficient objections to warrant termination of the candidacy, we discern no legal basis authorizing the Board to terminate a candidacy. In the present case, the sustained objections, while significant, nonetheless left McGrath with a sufficient number of signatures to support her candidacy. Moreover, we agree with the Board's observation that McGrath's presence on a ticket with other candidates presented a unique situation. Her candidacy was, in fact, supported by signatures gathered by countless other people who were not accused of wrongdoing.

We are equally unpersuaded by Mitchell's argument that McGrath's candidacy should have been terminated due to her conduct during the evidentiary hearing before the Board. This position is clearly lacking any support in statutory or decisional law. More importantly, Mitchell's only citation within this argument is to criminal penalties for false statements pursuant to the Election Code. Parties are required to support their arguments with citation to relevant authority. See 210 Ill. 2d R. 341(h)(7). Mitchell has failed to do so. Therefore, this argument is forfeited.

Mitchell also maintains that McGrath's candidacy should have been terminated because of her alleged violations of the Rules of Professional Conduct. This argument is, once again, unsupported in statutory or case law. Nevertheless, we do not discern how a candidacy could be terminated based upon what are only allegations at this point. While it is entirely possible

10

McGrath's conduct may be subject to ethical review by the appropriate authorities, our role is limited to reviewing the decision of the Board. Adherence to this salutary principle simply fails to provide a basis for us to alter the decision of the Board.

Mitchell next argues the Board erred when it did not terminate McGrath's candidacy where her statement of candidacy allegedly contained a false swearing and was notarized by Browning. More particularly, Mitchell posits that the Board overlooked problems with the statement of candidacy and that these irregularities provide a secondary basis for terminating McGrath's candidacy. Interestingly, no mention is made of how the Board's decision does not address the former name issue raised as to the statement of candidacy. Nevertheless, the alleged irregularities in the statement of candidacy were raised before the trial court. There, the judge opined that this claim was waived due to Mitchell's failure to raise it with particularity before the Board. A cursory review of the Board's decision reveals no mention of the statement of candidacy. The Board's decision was focused entirely upon the questions surrounding the petitions and the notarizations. Interestingly, Mitchell claims, "The Board's oversight to fully carry out its ruling can be attributed to the pace of the election process." Yet, we perceive the reason the Board did not consider this matter is more explicit than amorphous considerations of the pace of proceedings.

As noted, Mitchell's objections filed with the Board were significantly detailed. Within those objections were several paragraphs addressing the statement of candidacy. However, none of the objections related to the notarization of that document. Consequently, this matter was clearly not before the Board at the outset. Mitchell contends she could not have known to object

11

to such an irregularity because it is a point that developed during the proceedings; therefore, she is excused for not having raised it. Moreover, Mitchell states, "McGrath and Browning admit that *no* oath was ever administered by Browning to McGrath prior to McGrath's execution of any Nominating Papers, which would include the Statement of Candidacy." (Emphasis in original.)

We find it unsettling that the report of the proceedings before the Board does not support Mitchell's claim. McGrath did not testify about being administered an oath on direct examination. The only mention came in response to a question from one of the Board members regarding the petitions. In that context, McGrath stated that Browning did not formally swear her. Similarly, Browning's testimony concerning the swearing of oaths was limited exclusively to the petitions and signatures of the circulators. Neither McGrath nor Browning was ever examined in any fashion about the statement of candidacy. All of their testimony concerned the petitions. Furthermore, even if the failure to swear an oath did extend to the statement of candidacy, there was nothing before the Board to support it. Mitchell's extension of the testimony about the petitions to the statement of candidacy is an overstatement, bordering on a misrepresentation of the record.

Putting aside the testimony, we further discern that the arguments of Mitchell's counsel never addressed the statement of candidacy. The thrust of the argument was that McGrath's case was unique in that the misconduct alleged directly involved the candidate herself. According to Mitchell, McGrath's having admitted to violations of the Election Code took her case outside the scope of previous cases and warranted action over and above the striking of some signatures. Even if this additional alleged irregularity would support further action, the Board was not

presented with this precise argument either in written submissions or at the hearing. Therefore, the Board properly addressed its decision to the objections properly before it. While it is tempting to address this argument, the same principles guide our analysis here.

As noted, section 10-10 of the Election Code instructs that the Board "shall decide whether or not the certificate of nomination or nominating papers or petitions on file are valid or whether *the objections thereto* should be sustained." (Emphasis added.) 10 ILCS 5/10-10 (West 2008). The plain language of the section leads us to conclude the Board is to consider the objections before it. There is nothing to indicate a duty or responsibility on the part of the Board to *sua sponte* raise issues or objections. That is the unique province of the objector. Similarly, there is nothing to indicate that an objector is foreclosed from raising additional issues during the course of the proceedings or from arguing them in seeking relief. We conclude the Board's decision was proper based upon the objections before it and its application of the law to the undisputed facts.

Though our decision does not require us to bring to light the flaws that were exposed in the evidentiary hearing against McGrath and her notary, Browning, we have little difficulty in concluding that the gravity of the conduct leading to the Board's action is indeed disquieting. We candidly agree with the Board's assessment of the intolerable and shocking nature of the alleged misconduct, particularly where it involves an attorney and aspirant to the bench. Clearly, the Board implied a desire to take further action to address McGrath's behavior and conduct. However, faithful to its charge, the Board exercised only the measure of authority granted it by statute.

13

1-10-0002

For the foregoing reasons, the judgment of the circuit court of Cook County, affirming the decision of the County Officers Electoral Board, is affirmed.

Affirmed.

HOWSE, J., concurs.

MURPHY, P.J., dissents.

1-10-0002

PRESIDING JUSTICE MURPHY, dissenting:

I respectfully dissent from the majority. I agree that striking a candidate from the ballot is a grave and most serious step. It follows that it is best for the legislature to provide clearer guidance enabling the Board to take such an action. While perfect clarity on this issue may be lacking from the legislature, I believe that the removal of the candidate by the Board would have been an appropriate response to McGrath's active disregard for the law in all the nominating petitions she touched as well as her statement of candidacy. I believe that striking her candidacy would have been supported by the Election Code (Code) (10 ILCS 5/1-1 *et seq.* (West 2006)) and associated case law. Further, validation of such an action would be a short and simple step, but, effectively, a giant leap for the protection of the electoral process and the integrity of the system.

The majority opinion correctly states the law as it has been ruled upon by our courts. I suggest that neither these reported cases nor the Code limits the Board from taking action in the instant scenario in order to protect the integrity of the electoral process. Unlike many of the cases discussed by the majority, the misconduct at issue here was that of the candidate--McGrath herself--not that of a circulator, volunteer, or member of the candidate's committee. Based on the evidence before the Board, it determined that it was proper and well within its power to strike the nomination sheets circulated by McGrath and/or notarized by Browning. I do not disagree with that conclusion; I simply believe that the Board could have, and should have, gone as far as it believed was supported by the facts before it.

In reaching its decision, the Board voiced its frustration that it believed it could not go

15

further in striking McGrath's candidacy. As set forth by the majority, the Board found the evidence in direct contravention with the requirements of the Code. The Board concluded that McGrath's behavior amounted to "intolerable duplicity," and continued on to say "for this to be done by a candidate for judicial office is particularly shocking." While the Board and majority exhibit particular shock based on the office sought, I believe that the behavior would be shocking regardless of what public office was sought. Additionally, while the trial court affirmed the findings of the Board, it also opined that, if not for waiver of the issue, it would have stricken McGrath's statement of candidacy, thereby removing her from the ballot.

Mitchell maintains that regardless of the sufficiency of the signatures that were not stricken, McGrath's name should have been removed from the ballot. The Board and the majority both voiced concern over the disenfranchisement of the numerous voters who signed the valid petition sheets. They opine that the ultimate resolution of this matter is best suited for other agencies with farther-reaching powers. I would suggest that these voters would be no less disenfranchised if the candidate was ultimately found unfit for office following action regarding her license to practice law or criminal proceedings. McGrath's actions put her in a position similar to that of a non-lawyer or a disbarred lawyer attempting to run for judicial office. Such candidates are not qualified to run for such office under Supreme Court Rule 67 (155 Ill. 2d R. 67(A)(3)(a), (A)(3)(b), (A)(3)(c)).

Despite the finding supporting McGrath's remaining on the ballot, the Board made interesting observations in forming its conclusion, stating that, in allowing the candidacy to stand, it was not excusing or minimizing the misconduct it labeled "intolerable duplicity." As highlighted

16

by the majority, the Board stated, "we have done everything that we believe we are empowered by law to do." The Board, believing it was powerless to go further, observed that "those organs of government with farther-reaching power than ours may choose to terminate the candidacy, or to instruct us that we have the power to do so. *** We fully expect that the matter will be pursued by those permanent agencies empowered to do so."

The frustration of the Board is patently clear from the verbiage it in its decision. That frustration must have been compounded by the solemn realization that none of the "permanent agencies" would be capable of acting prior to the election. That realization is further evidenced by this court's action. We issued an order keeping the candidate on the ballot, but delayed in writing this opinion.

In support of their conclusions, the Board and the majority both rely on cases in which the number of valid signatures surviving a challenge was sufficient to keep the candidate on the ballot. They then note that after striking the signatures notarized by Browning, McGrath maintained a sufficient number of signatures to support her candidacy. While this may be true, none of these cases specifically limits the permissible actions of the Board to the striking of the signatures. Just as important, these cases also do not forbid the Board from striking the candidate as a result of her intolerable duplicity.

The majority cites to the language of section 10-10 of the Code (10 ILCS 5/10-10 (West 2006)) and focuses on the case law to date that examines that language and the issue of the sufficiency of nominating papers. I believe that the majority reads the Code and these cases too narrowly. Section 10-10 requires the Board to examine to determine if the petitions are in proper

17

form, whether they were timely filed and "*in general* shall decide whether or not the certificate of nomination or nominating papers or petitions on file are valid or whether the objections thereto should be sustained." (Emphasis added.) 10 ILCS 5/10-10 (West 2006).

Clearly, McGrath's nominating papers were not "under the conditions required by law" or "genuine certificate of nomination or nomination papers or petitions which they purport to be" as required by section 10-10. 10 ILCS 5/10-10 (West 2006). The Board properly struck the improperly notarized petitions and I agree with the majority in affirming that decision. However, I stray from the majority's decision to stop there. I place extra importance on the use of "in general" in the next clause, as quoted above. The use of this phrase is far from limiting and invites a consideration of what other possible obligation the Board may have in completing its review to preserve the integrity of the electoral system.

Furthermore, the line of cases cited by the objector supports the premise that the Board, or trial court, must not " 'close its eyes and ears if evidence is relevant to the protection of the electoral process.' " *Fortas v. Dixon*, 122 Ill. App. 3d 697, 701 (1984); *Huskey v. Municipal Officers Electoral Board*, 156 Ill. App. 3d 201, 204 (1987); *Canter v. Cook County Officers Electoral Board*, 170 Ill. App. 3d 364, 368 (1988). It is true that these cases were distinguished by this court in *Delay v. Board of Election Commissioners*, 312 Ill. App. 3d 206, 208-10 (2000). However, the *Delay* court rested on the lack of authorization in section 10-8 of the Code (10 ILCS 5/10-8 (West 2006)) for any amendments to objections and the Board was presented with two wholly separate issues at hearing. Here, the issues of the nomination sheets, the statement of candidacy and McGrath's actions are all intertwined and part of the same overall issue.

1-10-0002

The majority contends that these cases support the Board's decision that it was limited to the remedy of only striking the identified signatures tainted by the improper notarizations. I disagree with the majority's limited view. The improper notarizations in this case tainted both the signature sheets and the statement of candidacy. It clearly flows from the testimony at the hearing on the objections to the petition that the statement of candidacy was tainted. By extension, the candidate's own testimony supports extending the taint to her candidacy itself. Accordingly, the inherent nature of both expedited electoral challenges and fraud support following, or extending, the *Fortas*, *Huskey* and *Canter* line of cases in order to serve the interests of justice and preserve the integrity of the system and rebuke McGrath's personal actions.

Cases that have considered the issue of fraud with respect to ballots cast, while not directly on point, also support the notion that, where fraud is involved, a harsher remedy is required. See *Qualkinbush v. Skubisz*, 357 Ill. App. 3d 594, 623 (2005). The majority correctly cites cases where the result of errors or a pattern of fraud was simply the striking of signatures, signature sheets or ballots. I maintain that there is one key distinguishing factor in those cases and the instant matter--the direct involvement of the candidate. There is some merit to McGrath's argument that the technical administration of an oath or notary requirements is not reason alone for removal from the ballot. However, safeguards such as these technical requirements take on added importance when a pattern of fraud develops and the veracity of a candidate is in question. The Board is charged with protecting the integrity of the electoral system, and as even McGrath acknowledged at the hearing, the notary requirement was created to carry out that goal as well.

I realize that this court is provided more latitude to consider certain issues and arguments

19

than the Board and circuit court. I also realize that there is a lack of precise authority to strike the candidate from the ballot on this issue. I believe this case presents the precise situation to provide authority to the Board to take such an action to preserve the integrity of the electoral system. My reasoning and decision are based purely on the Code, case law, and the mandate to protect the integrity of the electoral system. Where a candidate takes such an active part in a fraudulent scheme, it rises far above the situation where a volunteer, a circulator, or other person involved in a campaign person undertakes acts in violation of the Code.

Finally, the organs of government with farther reaching powers that might act in response to the instant scenario - the ARDC, Attorney General, State's Attorney, or the Judicial Inquiry Board - are not equipped to timely act to protect the integrity of the electoral system. Whether one of these agencies, or an individual under a *mandamus* action, investigates this matter, seeks redress in the courts, or imposes some penalty is not of import. None of these proposed proceedings could properly serve the important purpose of the Code and protect the electorate. McGrath's knowing actions in direct contravention of the Code while still being placed on the ballot calls into question the integrity of the system. The bottom line is that the Board is not only charged with protecting the system, but it also has the inherent power to protect its own integrity and impartiality from abuse by duplicitous actors. Accordingly, while moot now, I would have remanded this matter for consideration of whether McGrath's intolerable duplicity merited removal from the ballot.

1-10-0002

| | |
|---|---|
| Please Use Following Form:<br><br>Complete TITLE of Case | BRIDGET MITCHELL,<br>              Petitioner-Appellant,<br><br>v.<br><br>THE COOK COUNTY OFFICERS ELECTORAL BOARD, et al.,<br>              Respondents-Appellees. |
| Docket No.<br><br>COURT<br><br><br>Opinion Filed | No. 1-10-002<br>Appellate Court of Illinois<br>First District, FIFTH Division<br><br>March 5, 2010<br>(Give month, day and year) |
| JUSTICES | JUSTICE TOOMIN delivered the opinion of the court:<br><br>HOWSE, J.                                  concur [s]<br><br>MURPHY, P.J.                          dissent[s] |
| APPEAL from the Circuit Ct. of Cook County, Chancery Div. | Lower Court and Trial Judge(s) in form indicated in the margin:<br><br>The Honorable   Maureen Ward Kirby, Judge Presiding. |
| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)<br><br>Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br><br>Daniel J. Kelley<br>Attorney for the Candidate<br>Bonnie Carol McGrath<br>5738 North Richmond Street<br>Chicago, IL 60659<br>773/275-4189<br><br>James M. Scanlon<br>Joan T. Agnew<br>James M. Scanlon & Associates PC<br>8 S. Michigan Avenue, Suite 800<br>Chicago, IL 60603<br>312/782-8163 |

1-10-0002

Counsel for Respondent-Appellee
Board of Election Commissioners for
the City of Chicago

Anita Alvarez, State's Attorney
Marie Spicuzza, ASA
500 Richard J. Daley Center
Chicago, Illinois 60602
312/603-5489
Counsel for Respondent-Appellee
Cook County Clerk David Orr

Steven M. Laduzinsky
LAW OFFICES OF STEVEN M.
LADUZINSKY, P.C.
216 South Jefferson Street, Suite
301
Chicago, IL 60661
312/424-0700

James P. Nally
LAW OFFICES OF JAMES P.
NALLY, P.C.
8 South Michigan Avenue, Suite
3500
Chicago, IL 60603
312/422-5560

James R. Thompson
Kyle P. De Jong
Matthew R. Carter
Gregory M. Bassi
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
312/558-5600