2019 IL App (4th) 180502

NO. 4-18-0502

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| DAVID W. COOKE, | ) | Direct Review of the Illinois |
|     Petitioner, | ) | State Board of Elections |
| v. | ) | No. 16CD93 |
| THE ILLINOIS STATE BOARD OF ELECTIONS; | ) | |
| WILLIAM J. CADIGAN, in His Official Capacity as | ) | |
| Chairman; JOHN R. KEITH, in His Official Capacity as | ) | |
| Vice Chairman; WILLIAM M. McGUFFAGE, in His | ) | |
| Official Capacity as Member; ANDREW K. | ) | |
| CARRUTHERS, in His Official Capacity as Member; | ) | |
| CHARLES W. SCHOLZ, in His Official Capacity as | ) | |
| Member; IAN K. LINNABARY, in His Official | ) | |
| Capacity as Member; KATHERINE S. O'BRIEN, in Her | ) | |
| Official Capacity as Member; CASANDRA B. | ) | |
| WATSON, in Her Official Capacity as Member; and | ) | |
| COMMITTEE FOR FRANK J. MAUTINO, | ) | |
|     Respondents. | ) | |

JUSTICE KNECHT delivered the judgment of the court, with opinion.
Presiding Justice Holder White and Justice Turner concurred in the judgment and opinion.

**OPINION**

¶ 1 In February 2016, David W. Cooke, an Illinois resident, filed a complaint with the Illinois State Board of Elections (Board), alleging the Committee for Frank J. Mautino (Committee) committed various violations of article 9 of the Election Code (10 ILCS 5/9-1 to 9-45 (West 2014)) based on its reported expenditures to Happy's Super Service Station (Happy's)

and Spring Valley City Bank (Bank) between 1999 and 2015. At the time of filing, the Committee was dissolved due to Frank J. Mautino becoming the Illinois Auditor General on January 1, 2016.

¶ 2        Following a March 2016 closed preliminary hearing, the Board found Cooke's complaint was filed on justifiable grounds and ordered the Committee to file amended reports to provide additional information concerning the expenditures to Happy's and the Bank. The Committee failed to file amended reports. At an April 2017 public hearing, the parties presented evidence and argument relating to both the Committee's failure to comply with the Board's order to file amended reports and the substantive claims raised in Cooke's complaint. The Board found the Committee willfully failed to comply with part of its order and imposed a $5000 fine. The Board also found violations of the Election Code based on the Committee "filing disclosure reports that were insufficient with regard to documentation, amount and accuracy of reported expenditures to [the Bank] and [Happy's]."

¶ 3        After the public hearing, Cooke filed a motion to reconsider, arguing the Board failed to address and issue rulings on his claims alleging the Committee violated section 9-8.10(a)(2) and (a)(9) of the Election Code (*id.* § 9-8.10(a)(2), (a)(9)) based on its use of committee funds. At a June 2017 hearing on the motion, a Board member moved to find Cooke had proven his section 9-8.10(a)(2) and (a)(9) claims and to impose "an additional fine of $5000 to run concurrently with the fine" previously imposed. The Board member's motion failed due to a deadlock four-to-four vote, and Cooke's motion to reconsider was denied. Cooke thereafter filed a petition with this court seeking direct review of the Board's decision.

¶ 4        In May 2018, we issued a decision remanding the matter for the Board to

(1) amend, based on the concessions of the parties on appeal, its order to show the Committee violated sections 9-7 and 9-11 of the Election Code (*id.* §§ 9-7, 9-11) based on its accounting and reporting of committee expenditures and (2) address and issue rulings on the merits of Cooke's claims alleging the Committee violated section 9-8.10(a)(2) and (a)(9) of the Election Code (*id.* § 9-8.10(a)(2), (a)(9)) based on its use of committee funds. *Cooke v. Illinois State Board of Elections*, 2018 IL App (4th) 170470, ¶ 95, 104 N.E.3d 516.

¶ 5 Following a July 2018 special meeting on remand, the Board (1) issued a *nunc pro tunc* order finding the Committee violated sections 9-7 and 9-11 of the Election Code (10 ILCS 5/9-7, 9-11 (West 2014)) and (2) addressed and ruled on Cooke's section 9-8.10(a)(2) and (a)(9) claims. The Board, based on a deadlock, four-to-four vote, concluded it could not find the Committee violated either section 9-8.10(a)(2) or section 9-8.10(a)(9) of the Election Code (*id.* § 9-8.10(a)(2), (a)(9)).

¶ 6 Cooke again seeks direct review of the Board's decision. Cooke argues we should reverse the Board's decision to the extent it ruled against him on his section 9-8.10(a)(2) and (a)(9) claims and then remand for a determination of the appropriate fines. We affirm in part, reverse in part, and remand with directions.

¶ 7 I. BACKGROUND

¶ 8 A detailed background concerning the prior proceedings in this case can be found in our previous decision. See *Cooke*, 2018 IL App (4th) 170470, ¶¶ 3-78. For the purposes of this appeal, we will summarize the facts established at the public hearing relating to Cooke's section 9-8.10(a)(2) and (a)(9) claims as well as the proceedings and rulings that occurred following our remand.

¶ 9                                          A. Public Hearing

¶ 10       The evidence presented at the April 2017 public hearing included, among other things, transcripts from a deposition of the Committee's former treasurer, various reports detailing the Committee's expenditures and contributions, and a December 14, 2012, letter addressed to the Committee from a Board staff member. The following is gleaned from the evidence presented as it relates to Cooke's section 9-8.10(a)(2) and (a)(9) claims.

¶ 11       Between 1999 and 2015, the Committee reported $225,109.19 in expenditures to Happy's for gasoline and vehicle repairs. During that time, the Committee did not own or lease any vehicles. The gas and repairs were expensed to a charge account at Happy's for the Committee. On a monthly basis, the Committee paid an invoice from Happy's for the expenses incurred on the charge account. Mautino had a practice whereby he would give a list of names of individuals to Happy's to serve as authorization for those individuals to purchase gas with the Committee's charge account when they were working on the campaign. The Committee's treasurer, who indicated she personally had been authorized to purchase gas with the Committee's charge account, was not reimbursed for gas on a per mileage basis for driving she did related to the Committee or her work in the district office. The charge account was also used to pay for repairs to Mautino's four personal vehicles.

¶ 12       Between 2000 and 2015, the Committee reported $159,028 in expenditures to the Bank. The expenditures were actually checks written to the Bank for the purpose of withdrawing cash, which was often in whole dollar amounts, and that cash was used for expenditures to other vendors. Either Mautino or the Committee's treasurer would write and cash the checks. Some of the expenditures were for travel expenses for meetings, while others were for election-day

expenses, such as hiring poll watchers, precinct walkers, or phone callers. It was the Committee's practice to obtain and keep receipts for expenses it paid with the cash from the Bank. The Committee treasurer disposed of the receipts after Mautino was appointed Illinois Auditor General. As to the travel expenses, Mautino would write and cash a check prior to leaving for the meeting. Mautino would sometimes, but not always, bring back receipts from the expenses he incurred when traveling. In 2014 and 2015, the Committee reported 13 expenditures as being for Chicago or Springfield meetings or travel expenses. The 13 expenditures were in whole dollar amounts, such as $150, $200, and $250. The Committee's treasurer did not recall an instance where Mautino deposited cash with the bank when he returned from travel with receipts for expenses totaling an amount less than the amount of cash previously obtained from the bank. The committee reports did not indicate Mautino sought additional cash for unexpected expenses during travel nor did they disclose contributions from Mautino relating to unexpected expenses paid by Mautino personally during travel.

¶ 13 The December 14, 2012, letter addressed to the Committee from a Board staff member requested clarification concerning a quarterly report as to expenditures reported to various individuals for gas, travel expenses, expenses for a golf outing, and expenses for a county fair booth. The Board staff member asserted, citing the administrative rules and regulations interpreting sections 9-6, 9-10, and 9-11 of the Election Code (10 ILCS 5/9-6, 9-10, 9-11 (West 2010)), "expenditures need to be listed by vendor instead of listing the individual or committee who was reimbursed for the payment of the expenditures." See 26 Ill. Adm. Code 100.70, amended at 35 Ill. Reg. 2295 (eff. Feb. 4, 2011).

¶ 14                                B. Supporting Briefs

¶ 15		Following our remand, the Board allowed the parties to submit written briefs in support of their respective positions as to whether Cooke had proven his section 9-8.10(a)(2) and (a)(9) claims.

¶ 16						1. *Cooke's Brief*

¶ 17		As to his section 9-8.10(a)(9) claim, Cooke asserted section 9-8.10(a)(9) "allows a committee to reimburse people who use their own vehicles for campaign or governmental purposes for their actual mileage, but prohibits expenditures for gas and repairs of a vehicle unless the vehicle is both: (1) owned or leased by the committee; and (2) used primarily for campaign purposes or for the performance of governmental duties." Cooke contended:

> "The reason for this is not difficult to understand: Once someone's
>
> gas tank is filled, there is no way to ensure that the gas will only be
>
> used for permissible purposes. Reimbursements for actual mileage
>
> eliminate this problem."

Cooke argued, because the evidence showed the Committee paid Happy's directly for gas and repairs of personal vehicles, the Committee violated section 9-8.10(a)(9). Cooke requested the Board impose, at a minimum, a $225,109.19 fine in accordance with section 9-8.10(b) of the Election Code (10 ILCS 5/9-8.10(b) (West 2014)), as the evidence demonstrated the Committee knowingly made expenditures in violation of section 9-8.10(a)(9).

¶ 18		As to his section 9-8.10(a)(2) claims, Cooke argued, because it was virtually certain at least some of the gas and repairs paid for would be used for personal as opposed to campaign or governmental purposes, the Committee violated section 9-8.10(a)(2) by making expenditures in excess of the fair market value of any services the Committee received in

exchange. Cooke also argued, because the checks to the Bank were cashed in whole dollar amounts and no excess cash was ever returned, the Committee violated section 9-8.10(a)(2) by making expenditures in excess of the fair market value of any services the Committee received in exchange. In so arguing, Cooke specifically highlighted the expenditures for travel expenses and suggested it was "implausible" Mautino could have known in advance the exact cost of travel expenses, and the travel expenses inevitably cost less and the remaining cash was not returned. Cooke also noted Mautino could not claim he consistently took less cash than he actually spent, as he would have been required to disclose his costs as contributions to his campaign, which he did not do. Cooke requested, in accordance with section 9-8.10(b), the Board to impose, at a minimum, a $225,109.19 fine based on the Committee's unlawful expenditures to Happy's and a $159,028 fine based on its unlawful expenditures to the Bank for its knowing violations of section 9-8.10(a)(2).

¶ 19                                    2. *Committee's Brief*

¶ 20        As to Cooke's section 9-8.10(a)(9) claim, the Committee argued the evidence failed to show a knowing violation occurred, as its treasurer indicated "the gas paid for by the Committee was in accordance with the direction given *** by Board staff and [the treasurer's] historical practice of reporting." The Committee also noted its treasurer "never received any notification from the Board that expenditures to [Happy's] for gas and repairs should detail the ownership of the vehicles involved or be shown as direct reimbursements."

¶ 21        As to Cooke's section 9-8.10(a)(2) claims, the Committee initially asserted section 9-8.10(a)(2) concerned "the price a reasonable person would pay to purchase an item or service that is also charged to other people." The Committee argued the evidence failed to show

it "paid more for gas at Happy's than paid by others." The Committee also argued the evidence failed to show it paid more than the fair market value for the various expenses with the funds withdrawn from the Bank.

¶ 22                                    C. Board Meeting

¶ 23          On July 10, 2018, the Board conducted a special meeting to address the matters in this case. The Board initially issued a *nunc pro tunc* order finding the Committee violated sections 9-7 and 9-11 of the Election Code (*id.* §§ 9-7,  9-11) based on its accounting and reporting of committee expenditures. The Board then allowed the parties to present oral argument in support of their respective positions as to whether Cooke had proven his section 9-8.10(a)(2) and (a)(9) claims. Prior to doing so, Chairman William J. Cadigan indicated the Board would "wait until we make a determination on the (a)(2) and (a)(9) violations before we deal with the issue of fines."

¶ 24          As to his section 9-8.10(a)(9) claim, Cooke asserted section 9-8.10(a)(9) "prohibits paying directly for gas and repairs of vehicles not owned or lease[d] by the [C]ommittee" and argued the evidence showed the Committee violated that section by paying Happy's directly for gas and repairs of personal vehicles. As to his section 9-8.10(a)(2) claims, Cooke argued the evidence showed the Committee violated section 9-8.10(a)(2), as the manner in which the Committee made expenditures at Happy's and the Bank inevitably allowed for money to be used for personal purposes for which the Committee received nothing in exchange. Cooke requested the Board impose fines as outlined in his supporting brief.

¶ 25          As to Cooke's section 9-8.10(a)(9) claim, the Committee asserted section 9-8.10(a)(9) was modified by section 9-8.10(c) of the Election Code (*id.* § 9-8.10(c)) to allow a

political committee to directly pay for gas and repairs of personal vehicles when they are used for campaign or governmental purposes and, as such, its direct payment to Happy's for gas and repairs of personal vehicles did not violate section 9-8.10(a)(9). The Committee also argued the evidence failed to show it committed a knowing violation where it followed the directions from a Board staff member in the December 14, 2012, letter to report gas spent to the vendor and not the individual. As to Cooke's section 9-8.10(a)(2) claims, the Committee argued the evidence failed to show it paid more than the fair market value for the gas from Happy's or for the various expenses with the funds withdrawn from the Bank. As a final matter, the Committee asserted the Board did not have the authority to impose a fine in excess of $5000.

¶ 26　　　　Following argument, a discussion occurred between the Board members and the parties. Member Andrew K. Carruthers initially noted he agreed with Chairman Cadigan "we shouldn't talk about the amount of the fine until we actually get there." Member Carruthers indicated he anticipated the Board making motions and, depending on the outcome of the motions, the Board would then make a determination as to the matter of fines.

¶ 27　　　　The Board members first addressed Cooke's section 9-8.10(a)(9) claim. Member Carruthers questioned the Committee whether section 9-8.10(c) was a "catch-all" to allow an officeholder the ability to "spend money for essentially what they want to defray their expenses," including paying a vendor directly for expenses of a personal vehicle rather than reimbursing per mileage. The Committee responded, "That is one way to do it, yes," and suggested that way was consistent with the December 14, 2012, letter from the Board staff member. Member Carruthers expressed disagreement with the Committee's position, noting (1) the December 14, 2012, letter related to reporting, as opposed to use of, committee funds and (2) his belief section 9-8.10(a)(9)

only allowed a committee to pay directly for expenses of a vehicle it owned or leased. The Committee asserted section 9-8.10(a)(9) was not "exclusive," as it only provided a political committee "may" reimburse for mileage. Member Carruthers disagreed with the Committee's position.

¶ 28        Member Ian K. Linnabary questioned whether a political committee could make expenditures under section 9-8.10(c) for individuals other than the officeholder and suggested the plain language allowed expenditures only for the officeholder. The Committee asserted a committee could make expenditures for individuals other than the officeholder as long as the expenditures were for campaign or governmental purposes. The Committee also asserted it was appropriate under section 9-8.10(c) for it to pay for repairs to Mautino's vehicles, as those vehicles were used for campaign or governmental purposes.

¶ 29        Chairman Cadigan expressed, after first noting the fact Board members were appointed because of their experience with election laws, his belief section 9-8.10(c) applied to expenditures for things such as job fairs and community events. Chairman Cadigan believed section 9-8.10(a)(9) was the exclusive provision for dealing with expenditures related to vehicles.

¶ 30        Member Linnabary expressed agreement with the positions of Chairman Cadigan and Member Carruthers. Member Linnabary further highlighted the difficulty of allocating responsibility for repairs due to wear and tear on a vehicle used for both personal and campaign purposes. Member Carruthers suggested the difficulty in allocating responsibility was why section 9-8.10(a)(9) did not allow for a committee to make direct expenditures for repairs of a vehicle not owned or leased by the committee.

¶ 31    Member William M. McGuffage disagreed with the positions of Chairman Cadigan and Members Carruthers and Linnabary, believing section 9-8.10(a)(9) only regulated for repairs if the political committee owned or leased the vehicle and section 9-8.10(c) was a "catch-all *** to pick up things that might not have been covered." Member McGuffage believed Cooke failed to show the expenditures for gas and repairs were for personal as opposed to campaign purposes.

¶ 32    Vice Chairman John R. Keith questioned whether the Committee's treasurer was simply following the procedure of the former treasurer when making expenditures to Happy's for gas for personal vehicles. The Committee responded in the affirmative and also noted the treasurer continued in such a manner based on the letter from the Board.

¶ 33    The Board's discussion then moved on to whether Cooke had proven his section 9-8.10(a)(2) claims. As to the expenditures reported to the Bank, Chairman Cadigan indicated he did not believe Cooke had met his burden of proof as it related to the cash used for election-day expenses but believed he had met his burden of proof as it related to the cash used for travel expenses. Members Carruthers and Linnabary expressed agreement with the position of Chairman Cadigan. As to the cash used for travel expenses, Chairman Cadigan and Members Carruthers and Linnabary noted (1) the cash was obtained prior to travel, (2) the cash was obtained in whole dollar amounts, (3) Mautino would sometimes not return receipts after traveling, (4) Mautino never returned any amount after traveling, and (5) Mautino did not seek additional cash for unexpected traveling expenses.

¶ 34    Member Charles W. Scholz disagreed with the position of Chairman Cadigan and Members Carruthers and Linnabary, suggesting it was speculative and based on the inadequacy

of the reporting. Member Scholz also noted the Board's "big hammer" was ballot forfeiture—Mautino could not run for office in Illinois again due to the outstanding fine against the Committee. Member McGuffage agreed with Member Scholz, noting the lack of evidence due to the inadequacy of the reporting. Member McGuffage acknowledged the fact the reported expenditures were in whole dollar amounts was suspect but asserted without amended reports he was unable to determine "which was campaign expenditures, which was personal expenditures."

¶ 35        At one point during the discussion, Member Linnabary posed the following question:

> "[I]f Representative Mautino took a disbursement from the [Committee] for $200 and then spent $170 on reimbursable expenses, so, therefore, took more money than he had expenses and didn't refund that money to the [C]ommittee, can we all agree that that would be an expenditure to Representative Mautino in excess of the fair market value?"

Vice Chairman Keith answered Member Linnabary's question in the negative, stating:

> "I can't agree with that because we don't know what happened to that $30. It could be—I mean, we're all just speculating. That's the problem. Because Chicago may have been $170, and on the way home, he may have stopped *** [and] met with a county chairman and picked up the tab for $30. We don't know."

¶ 36        At another point during the discussion, Member Carruthers entered as a Board exhibit a March 6, 2017, declaration indicating Mautino intended to assert his fifth amendment

privilege if he was subpoenaed to testify at a deposition in this case. Member Carruthers suggested, citing *Canter v. Cook County Officers Electoral Board*, 170 Ill. App. 3d 364, 523 N.E.2d 1299 (1988), the Board could draw a negative inference from the fact Mautino refused to testify. Cooke argued the Board should make such an inference, as Mautino was the individual who actually spent the money withdrawn from the Bank. The Committee disagreed, noting its treasurer testified Mautino brought back receipts from his traveling. Member Linnabary suggested "consequences" were warranted where an officeholder is writing checks to himself, taking cash, and then only sometimes returning receipts. Member McGuffage suggested a negative inference was not warranted given a possibly ongoing federal investigation. See *Cooke*, 2018 IL App (4th) 170470, ¶¶ 31-35.

¶ 37 Following the discussion, Member Carruthers moved to find "[Cooke] has met [his] burden of proof by the preponderance of the evidence and that the [Committee] violated [s]ection [9-]8.10(a)(9) by making expenditures for the maintenance and repair and gas of motor vehicles that were neither owned nor leased by the [C]ommittee, and that should the motion pass, we deliberate as to the amount of the fine." Chairman Cadigan and Members Carruthers, Linnabary, and Katherine S. O'Brien voted in favor of the motion. Vice Chairman Keith and Members McGuffage, Scholz, and Cassandra B. Watson voted against the motion. Due to the failure to obtain five votes, the motion failed. The Board's general counsel advised the Board members to give some explanation as to the bases of their votes.

¶ 38 Chairman Cadigan stated he believed Cooke had met his burden of proof and shown the Committee violated section 9-8.10(a)(9). Member Carruthers agreed with Chairman Cadigan, stating any expenditure for gas and repairs on a vehicle neither owned nor leased by the

Committee was a violation of section 9-8.10(a)(9). Members Linnabary and O'Brien indicated they reached their decisions based on the same reasoning as Chairman Cadigan and Member Carruthers. Vice Chairman Keith stated, "I do not believe that the burden of proof has been met by [Cooke] and that there was a knowing violation of the article based upon the record before us. While we speculate that there may be violations, I don't believe there's sufficient evidence in the record." Member McGuffage indicated he reached his decision based on the same reasoning as Vice Chairman Keith. Member Scholz indicated he reached his decision based on his belief that, to make any "determination with specificity, we would need the adequate reports." Member Watson indicated she believed Cooke "failed to meet [his] burden by a preponderance of the evidence based on the evidence presented and the existing record."

¶ 39       Member Carruthers next moved to find "[Cooke] has met [his] burden of proof by a preponderance of the evidence and that the [Committee] violated [s]ection [9-]8.10(a)(2) by making expenditures clearly in excess of fair market value for the goods and services received by the [C]ommitee, by making expenditures for gas and repairs for personal vehicles rather than reimbursing them on the mileage rate, and by withdrawing funds from the bank in whole dollar amounts that were purportedly used for campaign expenses without returning any cash. And that if the motion should pass, we deliberate as to the amount of the fine." Chairman Cadigan and Members Carruthers, Linnabary, and O'Brien voted in favor of the motion. Vice Chairman Keith and Members McGuffage, Scholz, and Watson voted against the motion. Due to the failure to obtain five votes, the motion failed. The Board's general counsel advised the Board members to give some explanation as to the bases of their votes.

¶ 40       Member Carruthers stated he believed Cooke had demonstrated at least some

portion of the expenditures for gas, repairs, and travel expenses was used for personal purposes and, therefore, the Committee paid more than the fair market value for what it received in return. In reaching his decision, Member Carruthers noted he relied in part on an adverse inference drawn from Mautino's refusal to testify. Chairman Cadigan and Members Linnabary and O'Brien indicated they reached their decisions based on the same reasoning as Member Carruthers. Vice Chairman Keith indicated he reached his decision based on "the explanation" he gave for his previous vote as well as his decision not to take an adverse inference from Mautino's refusal to testify. Member McGuffage indicated he reached his decision based on the same reasoning as Vice Chairman Keith and specifically noted his belief Cooke had not met his burden, as "[t]here's no evidence to conclusively show that fair market value was clearly exceeded." Members Scholz and Watson indicated they reached their decisions based on the same reasoning as Vice Chairman Keith and Member McGuffage.

¶ 41                                D. Board's Final Order

¶ 42         On July 16, 2018, the Board issued a written final order. The Board ordered, in part, as follows:

> "Based on the failure of the Board to achieve 5 votes upon motions
>
> to find that [Cooke] has met the burden of proof to find that:
>
>          a) [the Committee] violated [s]ection [9-8.10(a)(2)], and
>
>          b) [the Committee] violated [s]ection [9-8.10(a)(9)],
>
> the Board does not find that [the Committee] violated either of said
>
> [s]ections[.]"

¶ 43                                E. Petition for Review

¶ 44      On July 20, 2018, Cooke filed a petition for review with this court.

¶ 45                    II. ANALYSIS

¶ 46      Cooke argues we should reverse the Board's decision to the extent it ruled against him on his section 9-8.10(a)(2) and (a)(9) claims and then remand for a determination of the appropriate fines. Both the Committee and the Board disagree.

¶ 47                    A. Judicial Review

¶ 48      The parties do not dispute that the Board's decision denying Cooke relief on his section 9-8.10(a)(2) and (a)(9) claims following a public hearing is subject to judicial review. The Board concluded it could not find the Committee violated either section 9-8.10(a)(2) or section 9-8.10(a)(9) due to its failure to obtain five votes in support of the respective motions. See 10 ILCS 5/1A-7 (West 2014) ("[five] votes are necessary for any action of the Board to become effective"). Section 9-22 of the Election Code (*id*. § 9-22 (West 2014)) provides "any party adversely affected by a judgment of the Board may obtain judicial review." Here, it is clear Cooke was adversely affected by the Board's decision, as it resulted in the denial of relief on his section 9-8.10(a)(2) and (a)(9) claims. The Board's decision is subject to judicial review.

¶ 49                    B. Scope of Judicial Review

¶ 50      The parties also do not dispute the scope of judicial review of the Board's decision includes a review of all questions of law and fact considered by the Board in reaching its decision to deny Cooke relief on his section 9-8.10(a)(2) and (a)(9) claims. Section 9-22 of the Election Code (*id.*) provides judicial review "shall be governed by the provisions of the Administrative Review Law." The scope of review under the Administrative Review Law includes "all questions of law and fact presented by the entire record before the court." 735 ILCS

5/3-110 (West 2014). Here, judicial review of the Board's decision may be accomplished by examining the comments and reasoning articulated by the Board members at the special meeting on remand. See *Cook County Republican Party v. Illinois State Board of Elections*, 232 Ill. 2d 231, 242, 902 N.E.2d 652, 659 (2009) ("meaningful review of a deadlock vote may be accomplished by examining the reasons of the Board members")

¶ 51                                    C. Standard of Judicial Review

¶ 52        This appeal involves both the Board's interpretation and application of its enabling statute. We will review the Board's interpretations of the relevant sections of the Election Code *de novo*. *Id.* at 243. Though our review is *de novo*, we will give the Board's interpretations substantial weight and deference where possible. *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 16, 998 N.E.2d 1227 ("[A]n agency's interpretation of its *** enabling statute [is] entitled to substantial weight and deference, given that agencies make informed judgments on the issues based upon their experience and expertise and serve as an informed source for ascertaining the legislature's intent." (Internal quotation marks omitted)). We will review the Board's application of the relevant sections of the Election Code to the established facts for clear error. *Cook County Republican Party*, 232 Ill. 2d at 243-44. The Board's rulings will be deemed clearly erroneous only if we are "left with a definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Id.* at 244.

¶ 53              D. The Board's Interpretations of the Election Code

¶ 54        The parties disagree as to whether the Board properly interpreted section 9-8.10(a)(2) and (a)(9) of the Election Code.

¶ 55                                    1. *Principles of Statutory Construction*

¶ 56    In examining the Election Code, we are guided by the "same basic principles of statutory construction applicable to statutes generally." *Jackson-Hicks v. East St. Louis Board of Election Commissioners*, 2015 IL 118929, ¶ 21, 28 N.E.3d 170. Our primary objective in construing statutory provisions "is to ascertain and give effect to the intent of the legislature." *City of Chicago v. City of Kankakee*, 2019 IL 122878, ¶ 28. "The most reliable indicator of the legislature's intent is the language employed in the statute, which must be given its plain and ordinary meaning." *Wingert v. Hradisky*, 2019 IL 123201, ¶ 43. "Words and phrases should not be construed in isolation but must be interpreted in light of other relevant provisions of the statute." *Van Dyke v. White*, 2019 IL 121452, ¶ 46. We "must construe the statute so that each word, clause, and sentence, if possible, is given a reasonable meaning and not rendered superfluous [citation], avoiding an interpretation which would render any portion of the statute meaningless or void." *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 232, 756 N.E.2d 822, 827 (2001). We may "consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute in one way or another." (Internal quotation marks omitted.) *City of Chicago*, 2019 IL 122878, ¶ 28. In doing so, we presume "the legislature did not intend to enact a statute that leads to absurdity, inconvenience, or injustice." *Van Dyke*, 2019 IL 121452, ¶ 46.

¶ 57                    2. *Section 9-8.10 of the Election Code*

¶ 58    Section 9-8.10 of the Election Code (10 ILCS 5/9-8.10 (West 2014)) regulates the "[u]se of political committee and other reporting organization funds."

¶ 59    Section 9-8.10(a) provides a variety of ways in which "[a] political committee shall not make expenditures." *Id.* § 9-8.10(a)(1)-(11). In some instances, subsection 9-8.10(a) not

only directly prohibits certain expenditures but also provides particulars on how political committee and other reporting organization funds may be used. See *id.* § 9-8.10(a)(3), (a)(9).

¶ 60    Section 9-8.10(b) authorizes the Board to investigate alleged violations of section 9-8.10 and then render rulings and levy fines. *Id.* § 9-8.10(b). As to the ability to levy fines, subsection 9-8.10(b) permits the Board to "levy a fine on any person who knowingly makes expenditures in violation of [section 9-8.10]" "upon the affirmative vote of at least 5 of its members." *Id.*

¶ 61    Finally, section 9-8.10(c) provides: "Nothing in [section 9-8.10] prohibits the expenditure of funds of a political committee controlled by an officeholder or by a candidate to defray the customary and reasonable expenses of an officeholder in connection with the performance of governmental and public service functions." *Id.* § 9-8.10(c).

¶ 62                      3. *Section 9-8.10(a)(9) of the Election Code*

¶ 63    Section 9-8.10(a)(9) provides:

> "(a) A political committee shall not make expenditures:
>
> * * *
>
> (9) For the purchase of or installment payment for a motor vehicle unless the political committee can demonstrate that purchase of a motor vehicle is more cost-effective than leasing a motor vehicle as permitted under this item (9). A political committee may lease or purchase and insure, maintain, and repair a motor vehicle if the vehicle will be used primarily for campaign purposes or for

the performance of governmental duties. A committee shall not make expenditures for use of the vehicle for non-campaign or non-governmental purposes. Persons using vehicles not purchased or leased by a political committee may be reimbursed for actual mileage for the use of the vehicle for campaign purposes or for the performance of governmental duties. The mileage reimbursements shall be made at a rate not to exceed the standard mileage rate method for computation of business expenses under the Internal Revenue Code." *Id.* § 9-8.10(a)(9).

¶ 64 During the special meeting, the Board appears to have split on its interpretation of section 9-8.10(a)(9). The record makes clear the four members who voted in favor of finding violations believed section 9-8.10(a)(9) was the exclusive provision regulating campaign expenditures for vehicles and any expenditure for gas and repairs of a vehicle neither owned nor leased by a committee was a violation of section 9-8.10(a)(9). The record is not as clear as to the reasoning of the four members who voted against finding a violation. It appears that voting bloc believed section 9-8.10(c)—or a combination of section 9-8.10(a)(9) and section 9-8.10(c)—allowed a committee to make direct expenditures for gas and repairs of a personal vehicle used for campaign or governmental purposes.

¶ 65 Before this court, the Committee contends "[t]he only reasonable interpretation of [section 9-8.10(a)(9)] is that it prohibits certain uses of personal vehicles." In support of its interpretation, the Committee relies on the plain language found in section 9-8.10(a)(9). We find

the Committee's interpretation unpersuasive. The Committee states, partially quoting the statutory language found in section 9-8.10(a)(9), that section 9-8.10(a)(9) "prohibits a political committee from making expenditures for a vehicle 'for non-campaign or non-governmental purposes.'" The part of the sentence the Committee omits in its quotation of the statutory language refers to "the vehicle" as opposed to "a vehicle." The sentence comes directly after the sentence explaining a committee may purchase or lease a vehicle and make expenditures to insure, maintain, and repair its leased or purchased vehicle. In context, the sentence prohibits a committee from making expenditures for its purchased or leased vehicle when it is used for noncampaign or nongovernmental purposes. It does not allow a committee to make expenditures for personal vehicles so long as they are used for campaign purposes or for the performance of governmental duties.

¶ 66       The Board interprets section 9-8.10(a)(9) as allowing a committee to make expenditures directly for gas and repairs of a personal vehicle if the personal vehicle is used for campaign purposes or for governmental and public service functions so long as that reimbursement does not exceed the standard reimbursement rate. In support of its interpretation, the Board relies on the plain language from both sections 9-8.10(a)(9) and 9-8.10(c). We find the Board's interpretation unpersuasive. Section 9-8.10(a)(9) authorizes a committee to "insure, maintain, and repair" a vehicle if it is owned or leased by a committee. To adopt the Board's interpretation would be to render this language superfluous, which we may not do. Section 9-8.10(a)(9) also provides a specific manner whereby a committee may make expenditures to an individual who seeks compensation for the use of his or her personal vehicle for campaign or governmental purposes—reimbursement for actual mileage at a rate not to exceed the standard

mileage rate method for computation of business expenses under the Internal Revenue Code. *Id.* To adopt the Board's interpretation would be to also render this language superfluous.

¶ 67          Cooke interprets section 9-8.10(a)(9) as "prohibit[ing] committees from making expenditures for gas and repairs of a vehicle unless the vehicle is owned or leased by the committee and used primarily for campaign purposes or the performance of governmental duties." In support, Cooke relies on the plain language in section 9-8.10(a)(9). We find Cooke's interpretation persuasive. Section 9-8.10(a)(9) not only directly prohibits certain expenditures but also provides particulars on how political committee and other reporting organization funds may be used. A plain reading of section 9-8.10(a)(9) authorizes a committee to (1) lease a vehicle used primarily for campaign purposes or for the performance of governmental duties; (2) purchase a vehicle for campaign purposes or for the performance of governmental duties if it can prove doing so is more cost effective than leasing; (3) insure, maintain, and repair a leased or purchased vehicle; and (4) reimburse individuals who use a vehicle not leased or owned by the committee for actual mileage used for campaign purposes or for the performance of governmental duties at a rate not to exceed the standard mileage rate method for computation of business expenses. A plain reading of section 9-8.10(a)(9) does not authorize a committee to make expenditures to a third party for gas and repairs of a personal vehicle used for campaign purposes or for the performance of governmental duties. The fact the legislature authorized only mileage reimbursement for a committee's use of a personal vehicle makes sense. Mileage reimbursement (1) assures an individual is only compensated for fuel and associated wear and tear from the use of a personal vehicle for campaign or governmental purposes and (2) creates transparent and detailed records of use of committee funds.

¶ 68 We find section 9-8.10(a)(9) is the exclusive provision regulating campaign expenditures on vehicles and does not permit, and therefore effectively prohibits, any expenditure to a third party for gas and repairs of vehicles neither owned nor leased by a committee.

¶ 69 *4. Section 9-8.10(a)(2) of the Election Code*

¶ 70 Section 9-8.10(a)(2) of the Election Code (*id.* § 9-8.10(a)(2)) provides:

> "(a) A political committee shall not make expenditures:
>
> \*\*\*
>
> (2) Clearly in excess of the fair market value of the services, materials, facilities, or other things of value received in exchange."

¶ 71 During the special meeting, the Board appears to have agreed section 9-8.10(a)(2) regulates not only the amount but also the purpose for which an expenditure is used. The Board members who voted in favor of finding violations clearly believed the purpose for which an expenditure is used may be relevant in determining whether a section 9-8.10(a)(2) violation has occurred. Vice Chairman Keith, who voted against finding a violation, suggests in his response to Member Linnabary's question he held the same belief—indicating he needed to "know what happened to that $30." Member McGuffage, who also voted against finding a violation, made comments suggesting he believed the purpose for which an expenditure is used may be relevant in determining whether a section 9-8.10(a)(2) violation has occurred—noting without amended reports he was unable to determine "which was campaign expenditures, which was personal expenditures."

¶ 72　　　　Before this court, however, both the Committee and the Board interpret section 9-8.10(a)(2) as regulating only the amount of a specific expenditure and not its purpose. They suggest, so long as a committee pays market value for a particular item, the purpose for which that item is actually used is irrelevant. We find the interpretation of the Committee and the Board unpersuasive. As Cooke argues, the plain language of section 9-8.10(a)(2) does not regulate only the amount of a specific expenditure. An expenditure for a particular item or service used for an improper purpose would be an expenditure clearly in excess of the fair market value of what the committee received in exchange, which would be nothing. This interpretation makes sense. It prohibits committees from paying market value for a particular item or service and then allowing that item or service to be used for a purpose unrelated to campaign or governmental duties.

¶ 73　　　　We find section 9-8.10(a)(2) regulates not only the amount but also the purpose for which an expenditure is used.

¶ 74　　　　　　　　　E. The Board's Application of the Election Code

¶ 75　　　　The parties disagree as to whether the Board properly applied section 9-8.10(a)(2) and (a)(9) of the Election Code.

¶ 76　　　　　　　　　　　1. *Burden of Proof*

¶ 77　　　　It is undisputed Cooke had the burden to prove his claims by a preponderance of the evidence. See *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532-33, 870 N.E.2d 273, 293 (2006) ("[A] plaintiff to an administrative proceeding bears the burden of proof, and relief will be denied if he or she fails to sustain that burden."); *People ex rel. Rusch v. Fusco*, 397 Ill. 468, 473, 74 N.E.2d 531, 534 (1947) (noting the petitioner's claim alleging the respondents violated the election law "would have to be proved by a preponderance of the

evidence."). "A proposition proved by a preponderance of the evidence is one that has been found to be more probably true than not true." *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 191, 835 N.E.2d 801, 856 (2005).

¶ 78                    2. *Section 9-8.10(a)(9) Violations*

¶ 79         During the special meeting, the Board members who voted against finding a violation of section 9-8.10(a)(9) asserted they did so because Cooke failed to present sufficient evidence of a violation and any conclusion to the contrary would be speculative. For the reasons previously discussed, they reached their decision based on an erroneous interpretation of section 9-8.10(a)(9).

¶ 80         Neither the Committee nor the Board suggests the Board's decision may be sustained under the proper interpretation of section 9-8.10(a)(9) based on the evidence presented. The evidence presented at the public hearing showed the Committee (1) did not own or lease any vehicles and (2) made expenditures to Happy's for gas and vehicle repairs. This evidence was clearly sufficient to establish by a preponderance of the evidence the Committee made expenditures to a third party for gas and repairs of personal vehicles in violation of section 9-8.10(a)(9). The Board's decision to the contrary is clearly erroneous. We reverse the Board's decision to the extent it ruled Cooke failed to establish violations of section 9-8.10(a)(9) based on the expenditures for gas and repairs of personal vehicles at Happy's and remand for the Board to address the matter of fines under section 9-8.10(b). See *Cooke*, 2018 IL App (4th) 170470, ¶ 93 (declining to consider for the first time on appeal whether the Committee may be subject to additional fines under the Election Code if the Board found in favor of Cooke on any of his section 9-8.10 claims).

¶ 81                           3. *Section 9-8.10(a)(2) Violations*

¶ 82          During the special meeting, the Board members unanimously agreed Cooke failed

to establish a violation of section 9-8.10(a)(2) based on the expenditures reported to the Bank for

election-day expenses. The Board members disagreed as to whether Cooke presented sufficient

evidence to establish violations of section 9-8.10(a)(2) based on the expenditures for gas and

repairs of personal vehicles at Happy's as well as the expenditures reported to the Bank for travel

expenses.

¶ 83          As an initial matter, Cooke broadly asserts the Board clearly erred when it found

he failed to establish a violation of section 9-8.10(a)(2) based on the expenditures to the Bank "in

whole dollar amounts that were purportedly used for campaign expenses to undisclosed third

parties, while not returning any of the withdrawn cash." Cooke then focuses his argument on the

expenditures reported to the Bank for travel expenses. At no point does Cooke specifically

address the expenditures for election-day expenses. To the extent he attempts to contest the

Board's ruling concerning the election-day expenses, we find Cooke's claim to be forfeited. See

Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (argument must contain the contentions of the

appellant, the reasons therefor, and the citation of authorities; points not argued in an opening

brief are forfeited and shall not be raised in the reply brief, in oral argument, or in a petition for a

rehearing). We affirm the Board's decision to the extent it ruled Cooke failed to establish a

violation of section 9-8.10(a)(2) based on the expenditures reported to the Bank for election-day

expenses.

¶ 84          The Committee asserts the Board's decision rejecting Cooke's section 9-

8.10(a)(2) claim as it related to expenditures for gas and repairs to personal vehicles was not

clearly erroneous as the evidence failed to show the gas and repairs were used for personal purposes. The evidence established the Committee made expenditures to Happy's for gas and repairs of personal vehicles over a 15-year period. As Cooke argues, we find it would be inevitable at least some portion of the gas and repairs were for personal use. Cooke established it is more probably true than not that the Committee made expenditures for gas and repairs for personal purposes. By making expenditures for gas and repairs for personal purposes, the Committee made expenditures in excess of the fair market value for what it received in exchange, which was nothing. The Board's decision to the contrary is clearly erroneous. We note, had the Committee made expenditures for personal vehicle use in the manner authorized by section 9-8.10(a)(9), the Committee would have likely avoided any violations of section 9-8.10(a)(2), as reimbursements at a rate not to exceed the standard mileage rate method for computation of business expenses under the Internal Revenue Code effectively serves as a fair-market-value protection. We reverse the Board's decision to the extent it ruled Cooke failed to establish violations of section 9-8.10(a)(2) based on the expenditures to Happy's and remand for the Board to address the matter of fines under section 9-8.10(b).

¶ 85        The Committee also asserts the Board's decision rejecting Cooke's section 9-8.10(a)(2) claim as it related to expenditures to the Bank for travel expenses was not clearly erroneous, as the evidence failed to show any cash was used for personal purposes. The evidence showed (1) the cash was obtained prior to travel by Mautino, (2) the cash was obtained in whole dollar amounts, (3) Mautino would sometimes not return receipts after traveling, (4) the Committee's treasurer did not recall an instance where Mautino deposited cash with the bank when he returned from travel with receipts for expenses totaling an amount less than the amount

of cash previously obtained from the bank, (5) Mautino did not seek additional cash for unexpected traveling expenses, and (6) Mautino did not disclose any contributions relating to his personal payment of unexpected traveling expenses. Without needing to consider any possible adverse inference from Mautino's refusal to testify, we find the manner in which the Committee paid for travel expenses over a 15-year period inevitably led to at least some portion of the cash being used for personal purposes. By making expenditures to withdraw cash used for personal purposes, the Committee made expenditures in excess of the fair market value for what it received in exchange, which was nothing. The Board's decision to the contrary is clearly erroneous. We reverse the Board's decision to the extent it ruled Cooke failed to establish violations of section 9-8.10(a)(2) based on the expenditures to the Bank for travel expenses and remand for the Board to address the matter of fines under section 9-8.10(b).

¶ 86                                  F. Knowing Violations

¶ 87          As a final matter, we recognize some members of the Board who voted against finding violations of section 9-8.10(a)(9) suggested they did so because they concluded any violation was not "knowingly" committed. On appeal, Cooke contends the evidence established the Committee committed knowing violations and the Board's decision to the contrary is clearly erroneous. Neither the Committee nor the Board addresses Cooke's argument. We need not address Cooke's argument. Section 9-8.10(b) provides: "The Board may levy a fine on any person who knowingly makes expenditures in violation of [section 9-8.10] ***." 10 ILCS 5/9-8.10(b) (West 2014). The Board, quoting section 9-8.10(b), asserts, "If a section 9-8.10 violation is found, section 9-8.10(b) states that the Board 'may levy a fine on any person who knowingly' made improper expenditures." The Board's assertion supposes the determination of whether a

person knowingly made expenditures in violation of section 9-8.10 is a determination concerning the imposition of fines that is made only after a determination of whether a violation occurred. The Committee does not address the Board's interpretation of section 9-8.10(b). Absent any argument to the contrary, we agree with the Board's interpretation. Having now concluded the evidence established violations of section 9-8.10(a)(2) and (a)(9), the Board on remand can address whether the violations were knowingly committed in considering the matter of fines under section 9-8.10(b).

¶ 88                                    III. CONCLUSION

¶ 89        We affirm the Board's decision to the extent it ruled Cooke failed to establish a violation of section 9-8.10(a)(2) based on the Committee's expenditures to the Bank for election-day expenses. We reverse the Board's decision to the extent it ruled Cooke failed to establish violations of section 9-8.10(a)(2) based on the Committee's expenditures to the Bank for traveling expenses and to Happy's for gas and repairs of personal vehicles. We also reverse the Board's decision to the extent it ruled Cooke failed to establish violations of section 9-8.10(a)(9) based on the Committee's expenditures to Happy's for gas and repairs of personal vehicles. We remand with directions for the Board to address the matter of fines under section 9-8.10(b).

¶ 90        Affirmed in part and reversed in part; cause remanded with directions.

# No. 4-18-0502

| | |
|---|---|
| **Cite as:** | *Cooke v. Illinois State Board of Elections*, 2019 IL App (4th) 180502 |
| **Decision Under Review:** | Petition for review of order of Illinois State Board of Elections, No. 16-CD-93. |
| **Attorneys for Appellant:** | Jeffrey M. Schwab and James J. McQuaid, of Liberty Justice Center, of Chicago, for petitioner. |
| **Attorneys for Appellee:** | J. William Roberts, Anthony J. Jacob, Adam R. Vaught, and Carson R. Griffis, of Hinshaw & Culbertson LLP, of Chicago, for respondent Committee for Frank J. Mautino. |
| | Kwame Raoul, Attorney General, of Chicago (Aaron T. Dozeman, Assistant Attorney General, of counsel), for other respondents. |